# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No.: 21-CR-151 (CKK)** |
| | : | |
| **v.** | : | **18 U.S.C. § 111(a)** |
| | : | |
| **BARTON SHIVELY,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence Barton Shively to 37 months of incarceration on Counts 1 and 2, three years of supervised release, $2,000 in restitution, a $20,000 fine, and the mandatory $100 special assessment for each count of conviction. The Guidelines range for Counts 1 and 2 is 30-37 months' incarceration, and the recommended sentence is in the high end of that range.

## I.   INTRODUCTION

The defendant, Barton Shively, participated in the January 6, 2021, attack on the United States Capitol—a violent attack that forced an interruption of the certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 presidential election, injured more than one hundred police officers, and resulted in more than 2.8 million dollars in losses.[1]

---

[1] As of October 17, 2022, the approximate losses suffered as a result of the siege at the United States Capitol was $2,881,360.20. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police.

Shively walked from the "Stop the Steal" rally to the restricted U.S. Capitol grounds where he was among the very first people to break through after other rioters knocked down the first barricades on the Northwest side of the Capitol. Once on Capitol grounds, Shively violently assaulted law enforcement officers who were protecting the U.S. Capitol. Specifically, after other rioters broke down police barricades, Shively walked over those barricades, grabbed U.S. Capitol Police ("USCP") Officer S.L. by the officer's jacket and began yelling at the officer. Also, Shively was not acting in self-defense at the time he took these unlawful actions. Moreover, Shively directly struck and assaulted Metropolitan Police Department ("MPD") Officer N.E.T., striking the officer's hand, head, and shoulder areas. Shively was not acting in self-defense at the time when he struck Officer N.E.T. Shively also admitted that he attacked other officers including hitting an officer in the face with the officer's own baton while the officer was wearing a protective shield and kicking another officer (*see* Image #6 below) with his boot. In total, Shively spent approximately forty (40) minutes (from approximately 12:50 pm – around 1:30 pm) on the Capitol grounds, harassing and assaulting officers. He also gave a public, news interview after assaulting officers praising the work of the January 6 rioters.

Accordingly, the government recommends that the Court sentence Shively to 37 months' incarceration for his conviction of violating two counts of 18 U.S.C. § 111(a). 37 months' incarceration is at the high end of the advisory Guidelines' range of 30-37 months, which the government submits is the correct Guidelines calculation. A 37-month sentence reflects the gravity of Shively's conduct on January 6 and serves to deter those who would seek to emulate it.

## II.      FACTUAL BACKGROUND

### A.      The January 6, 2021 Attack on the Capitol

The government refers to the Court to the stipulated Statement of Offense filed in this case, ECF 46, at ¶¶1-7, for a short summary of the January 6, 2021 attack on the United States Capitol by hundreds of rioters, in an effort to disrupt the peaceful transfer of power after the November 3, 2020 presidential election.

### B.      Shively's Role in the January 6, 2021 Attack on the Capitol

Barton Shively traveled by car with friends from the Harrisburg, Pennsylvania area to Washington, D.C., to attend the "Stop the Steal" rally on January 6, 2021. After attending the rally, Shively and others walked to the restricted U.S. Capitol grounds. Sometime between from approximately 12:50 pm – around 1:30 pm on January 6, 2021, when the first barricades on the Northwest side of the Capitol were breached, Shively was one of the first people to cross the barricades after they were torn down by other rioters. Shively then walked up the Capitol Building steps and assaulted law enforcement officers attempting to protect the Capitol Building from breach. The below photos show Shively's assaults on law enforcement officers on January 6, 2021. The photos are screenshots of video footage[2] received through a public tip initially provided to the FBI's Public Affairs Office, file path 1610052299.05-639899bbd9c1841d168de1e5500df3a57683a47e-file 0_1of1_YouTube.mp4_clip_264_292. The video shows Shively shoving a U.S. Capitol Police Officer, Officer S.L., on the U.S. Capitol steps on January 6, 2021. The screenshot below shows Shively, wearing a scarf and tan coat, as he violently shoved Officer S.L.

---

[2] A copy of the video will be provided to the Court as an exhibit prior to the sentencing in this case.



*Image 1 - Shively confronts, pushes and grabs at USCP Officer S.L.*

In addition, Shively walked down a line of officers who were protecting the U.S. Capitol from rioters, Shively is seen in a crowd of rioters struggling with police officers, striking or attempting to strike the officers, and physically pushing the police line. The screenshots below show Shively attempting to gain further access to the U.S. Capitol grounds by striking, attempting to strike, and pushing against officers in the police line. *See* Images 2, 3, and 4 below

4



*Image 2 Shively confronts and strikes at a line of USCP officers*



*Image 3 - Shively confronts and strikes at a line of USCP officers*



*Image 4- Shively confronts and strikes at a line of USCP officers*

Moreover, Shively engaged in physical and assaultive contact with multiple District of Columbia Metropolitan Police Department (MPD) officers on the U.S. Capitol grounds. Shively was seen encouraging other rioters to unlawfully in the Capitol grounds and moment later swinging his left arm towards a MPD Officer N.E.T., and hitting MPD Officer N.E.T.'s left arm. At the same time, Shively also kicked other officers with his boot- *see* Image #6 below.



*Image 5 - Shively confronts a line of MPD officers*



*Image 6 - Shively confronts and kicks at a line of MPD officers*

During his assault on the law enforcement officers, Shively was sprayed with an eye irritant by the officers to prevent any further assaults on the officers by Shively. *See* Image 7 below.



*Image 7 - Shively has water poured over his eyes after he was sprayed with an eye irritant by the officers to prevent further assaults on officers*

After his assaults on the law enforcement officers, Shively was interviewed by a CNN reporter. The video link, https://edition.cnn.com/videos/business/2021/01/07/capitol-riot-inside-look-reeve-pkg-lead-vpx.cnn/video/playlists/congress-affirms-president-elect-biden-win, shows the CNN reporter interviewing Shively. A screenshot from the CCN interview is shown below. [3] *See* Image 8 below.

---

[3] Shively discussed his aggression towards law enforcement and his getting sprayed and retreating in a CNN interview discussed further below. A copy of the relevant portions of the interview video will be provided to the Court as an exhibit prior to the sentencing in this case.



*Image 8 Screenshot of Shively interview with CNN reporter*

After leaving the Capitol grounds sometime after 1:30 pm, in the above CNN interview, Shively stated, *inter alia*, that: 1) "What are we supposed to do . . . okay? Supreme Court's not helping us. No one's helping us. Only us can help us. Only we can do it;" 2) "We broke down the barriers, and we rushed them. We charged them. We got all the way to the steps. They made a line so we stood there, and we tried to push them back a little bit until finally they started getting rough with us so we kinda push them back. So that's what we did. We pushed them back. We tried to get up the steps. They wouldn't let us up. So they started pepper spraying and making everybody;" and 3) "That's what we're doing . . . fighting back." The reporter asks, "What's the point? What's the endgame?" to which Shively replied, "What's the point? We're losing our freedom. What do you mean what's the point?"

i.    *Shively's Knowledge of FBI Investigation and Interview*

On January 14, 2021, Shively contacted local law enforcement to report that he was at the U.S. Capitol during the January 6, 2021, incident. Shively reported seeing his photograph

circulating on the news and wanted to self-surrender to the FBI.[4] In addition, Shively admitted

that he had deleted all of the images and videos from 6 January 2021. On the same day, Shively

agreed to a voluntary interview with FBI agents from the Harrisburg, PA., FBI Office on January

14, 2021.

On the evening of January 14, 2021, Shively gave an interview to the FBI in which he

admitted, *inter alia*, that he and some of his friends attended the "Stop The Steal" rally and that

he, along with others, walked to the Capitol after the rally. During the interview, Shively stated

that once the barricades were broken down by other rioters, Shively walked over the broken-down

---

[4] On or about January 11, 2021, the FBI generated and circulated to the public a Be On the Lookout ("BOLO") Bulletin. (*See* below image of Shively–second from left bottom row)



*Image 9 Be On the Lookout ("BOLO") Bulletin with Shively*

police barriers and up the U.S. Capitol steps where law enforcement officers were standing protecting the U.S. Capitol. Shively stated that when he confronted the law enforcement officers, he was pushed back, Shively became angered at that time. Shively acknowledged that because the officers were pushing him he grabbed them by their jackets and he said "'what are you guys doing?' you know, 'we're American citizens. We're not going to hurt you. We're here to protest." Significantly, Shively admitted that the officers were scared by his and the other rioters' actions against law enforcement officers by stating that, "I mean it was a riot. I mean it was a mob of people, just yelling and screaming. I was talking to the cops, and you know I'm sure they were scared. I understand that, and they're they don't know what to do because it's overwhelming.

    *iii.*      *Shively's Violation of Release Conditions*

    As outlined *infra*, after the riot and Shively's arrest, and after he was placed on Release Conditions by this Court, Shively violated his Release Condition by possessing a shotgun and ammunition at his home which caused this Court to ultimately revoke his Release Conditions and detain Shively until sentencing in this matter.

    On or about May 4, 2022, U.S. probation officers from the Middle District of Pennsylvania conducted an unannounced home visit and found a shotgun, ammunition, knives, and a sword in the defendant's residence. *See Image 10 below*. Significantly, the "butt" of that shotgun had a cloth sleeve which stated, "THREE PERCENTERS."[5]  Given the nature and seriousness of the violations of his release conditions and his displayed

---

[5] "The term "Three Percenter" refers to the erroneous belief that only 3% of colonists fought against the British during the Revolutionary War—but achieved liberty for everybody. Three Percenters view themselves as modern day versions of those revolutionaries, fighting against a tyrannical U.S. government rather than the British." *See*, Anti-Defamation League, Defining Extremism: A Glossary of Anti-Government Extremist Terms, Movements and Philosophies. Published June 26, 2017.

lack of candor, both D.C. Pretrial Service Agency and the U.S. Probation Office for the Middle District of Pennsylvania, *inter alia*, requested the defendant be removed from all pretrial supervision programs. Based on that report, this Court ordered that a show-cause hearing be scheduled for May 9, 2022. On May 9, 2022, after a hearing regarding the violations, this Court ultimately revoked his Release Conditions and detained Shively until sentencing in this matter. *See* Court's Order ECF #42.



*Image 10 Photo of* Shotgun and ammunition found in Shively's residence

### III.   THE CHARGES AND GUILTY PLEA

4.      On November 10, 2021, a federal grand jury in the District of Columbia returned

an eleven- count Superseding Indictment charging Barton Shively with Civil Disorder, in violation

of 18 USC § 231(a)(3) (Count One); Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 USC § 111(a)(1) (Counts Two, Three, Four); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 USC § 1752(a)(1) (Count Five); Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 USC § 1752(a)(2) (Count Six); Impeding Ingress and Egress in a Restricted Building or Grounds, in violation of 18 USC § 1752(a)(3) (Count Seven); Engaging in Physical Violence in a Restricted Building or Grounds, in violation of 18 USC § 1752(a)(4) (Count Eight); Disorderly Conduct in a Capitol Building, in violation of 40 USC § 5104(e)(2)(D) (Count Nine); Impeding Passage Through the Capitol Grounds or Buildings, in violation of 40 USC § 5104(e)(2)(E) (Count Ten); and Act of Physical Violence in the Capitol Grounds or Buildings, in violation of 40 USC § 5104(e)(2)(F) (Count Eleven). On September 21, 2022, the defendant pled guilty to Counts Two and Three of the Superseding Indictment pursuant to a Rule 11(c)(1)(B) plea agreement.

## IV.  STATUTORY PENALTIES

Shively now faces sentencing on Counts Two and Three of the Superseding Indictment, each charging assault on a federal officer, in violation of 18 U.S.C. § 111(a)(1). As noted by the plea agreement and the Presentence Report issued by the Probation Office, Shively faces up to 8 years of imprisonment, a fine up to $250,000, and a term of supervised release of not more than three years of supervised release for each count of conviction.

## V.      THE SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007).

### A.  Guidelines Not in Dispute

The parties and Probation agree that the below Guidelines apply:

Count Two (18 U.S.C. § 111(a)(1)):

| | | | |
|---|---|---|---|
| U.S.S.G. §2A2.2[6] | Base Offense Level | | 14 |
| U.S.S.G. § 3A1.2(b) | Official Victim | | +6 |
| | | **Total:** | **20** |

Count Three (18 U.S.C. § 111(a)(1)):

| | | | |
|---|---|---|---|
| U.S.S.G. §2A2.2[7] | Base Offense Level | | 14 |
| U.S.S.G. § 3A1.2(b) | Official Victim | | +6 |
| | | **Total:** | **20** |

| | | |
|---|---|---|
| Highest Offense Level | | 20 |
| U.S.S.G. § 3D1.4 Grouping | Multiple Count Adjustment (2 units)[8] | +2 |
| **Combined Offense Level:** | | **22** |
| | | |
| Acceptance of responsibility | (U.S.S.G. §3E1.1) | -3 |
| | | |
| **Total Adjusted Offense Level:** | | **19** |

---

[6] By cross-reference from U.S.S.G. § 2A2.4(c)(1) (Obstructing or Impeding Officers), which directs that Section § 2A2.2 (Aggravated Assault) be applied if the conduct constituted aggravated assault.

[7] By cross-reference from U.S.S.G. § 2A2.4(c)(1) (Obstructing or Impeding Officers), which directs that Section § 2A2.2 (Aggravated Assault) be applied if the conduct constituted aggravated assault.

[8] Generally, offenses covered by the Guidelines in Chapter Two, Part A (including Guideline 2A2.2 applicable here) are specifically excluded from grouping under U.S.S.G. § 3D1.2(d).   Additionally, the Section 111(a) offenses here do not group under §§ 3D1.2(a)-(c) because they involve different victims and none of the counts embody conduct that is treated as a Specific Offense Characteristic enhancement or Chapter Three adjustment to the guideline applicable to another count. Accordingly, units are assigned to the group with the highest offense level. U.S.S.G. § 3D1.4. One additional unit is assigned for each group that is equally serious. U.S.S.G. § 3D1.4(a). Count Two is assigned one unit and Count Three is assigned one unit, totaling two units, and those two units are added to the highest offense level, 20.

*See* Plea Agreement at ¶¶ 5(A)(C); PSR ¶¶ 35-58 & 108.[9]

The PSR concluded that, for Counts Two and Three: Assaulting, Resisting, or Impeding Certain Officers, 18 USC § 111(a)(1), the applicable guideline for each Count is USSG §2A2.2 and further concluded that Counts Two and Three cannot be grouped because they represent a separate and distinct harm. Pursuant to USSG §3D1.4, the combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by specified units. *See* PSR ¶¶ 36 – 38.

The parties also agree that Shively's criminal history is category I, which mirrors the conclusion of the U.S. Probation Office. PSR ¶ 108. Accordingly, based on the government's calculation of the defendant's total adjusted offense level, after acceptance of responsibility, at 19, Shively's Guidelines imprisonment range is 30 to 37 months' imprisonment. The defendant's plea agreement contains an agreed-upon Guidelines range calculation that mirrors the calculation contained herein.

## VI.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

In this case, sentencing is guided by 18 U.S.C. § 3553(a). As described below, on balance, the Section 3553(a) factors weigh in favor of a lengthy term of incarceration.

### A.    Nature and Circumstances of the Offense

As shown in Section II(B) of this memorandum, Shively's felonious conduct on January 6, 2021 was part of a massive riot that almost succeeded in preventing the Certification Vote from being carried out, frustrating the peaceful transition of Presidential power, and throwing the United

---

[9] Based on the facts and circumstances of Shively's case, the government does not seek imposition of an upward departure pursuant to U.S.S.G. § 3A1.4 n.4, because a sentence within the Guidelines range of 30-37 months is sufficient, but not greater than necessary, to comply with the purposes of sentencing as set forth in 18 U.S.C. § 3553(a)(2).

States into a Constitutional crisis. The nature and circumstances of Shively's offenses were of the utmost seriousness, and fully support the government's recommended sentence of 37 months' imprisonment.

After unlawfully entering the Capitol grounds as part of a mob, Shively violently assaulted multiple law enforcement officers and incited others to attack the officers as well. After the riot, Shively celebrated his actions, showing no contrition in his interview with CNN. Simply stated, Shively incited and directly engaged in mob violence that helped delay the Certification of the 2020 Electoral College vote count. The seriousness of this offense demands a lengthy sentence of imprisonment.

### B.  Shively's History and Characteristics

Shively has the following criminal convictions: 05/01/1985 - Retail Theft (0 criminal history points); 06/09/1994 - Unlawful Delivery of Marijuana (0 criminal history points); 01/19/1994 - Possession of Drug Paraphernalia (0 criminal history points); 02/23/1993 – Harassment (0 criminal history points); 05/30/1993 - Harassment (0 criminal history points); and 10/06/1999 - Unlawful Possession of a Firearm (0 criminal history points).

Shively's criminal history (multiple harassment convictions and a conviction for unlawful possession of a weapon), though dated, is consistent with his conduct in in the instant investigation. Shively harassed officers (e.g., yelling and screaming at officers) and incited other rioters to harass and attack officers as well. He also unlawfully possessed a firearm in violation of his Release Conditions, as discussed above. Shively also went even further than harassment and unlawful firearm possession in the instant case, and turned to violence in the name of his political cause— kicking, punching, and pushing law enforcement officers protecting the Capitol. His willingness

to resort to violence on January 6, 2021, illustrates an escalation in his criminal behavior and the need for additional specific deterrence in this case.

### C.     The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

As with the nature and circumstances of the offense, this factor supports a sentence of incarceration. Shively's criminal conduct, violently assaulting multiple officers to prevent the Certification of the 2020 Electoral College vote count, was the epitome of disrespect for the law. Shively did not just assault Officers S.L. and N.E.T. He also assaulted multiple other officers, for instance, taking an officer's baton and hitting the officer with it, and kicking still at least one other officer with his boot, as discussed above.  This conduct needs to be fully reflected in the defendant's sentence and merits a sentence at the high end of the Guidelines range.

### D.     The Need for the Sentence to Afford Adequate Deterrence

#### i.     *General Deterrence*

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C. § 3553(a)(2)(B). The need to deter others is especially strong in cases involving domestic terrorism, which the breach of the Capitol certainly was.[10] The demands of general deterrence weigh strongly in favor of incarceration, as they will for nearly every case arising out of the violent riot at the Capitol.

#### ii.     *Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration. First, although Shively has a criminal

---

[10] *See* 18 U.S.C. § 2331(5) (defining "domestic terrorism")..

history category of I, his recent behavior shows a penchant for violence in support of his ideology. Second, although he has formally accepted responsibility for his actions by pleading guilty and claimed to be remorseful for his actions in a statement to Probation (PSR ¶34) , his statements in his interview with CNN after the assaults and his violations of this Court's Release Conditions after January 6 were those of a man who did not respect our democratic process or this Court's Orders, and who was not remorseful. *See also United States v. Matthew Mazzocco*, 1:21-cr-54-TSC, Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what he did. And that is when he felt remorse, and that is when he took responsibility for his actions.") (statement of Judge Chutkan). Shively's own actions and statements demonstrate that his sentence must be sufficient to provide specific deterrence from committing future crimes of violence, particularly in light of his admitted violent conduct against multiple officers. Thus, the need for the sentence to provide specific deterrence to this particular defendant also weighs in favor of a term of incarceration. Shively's criminal history and his actions that day were sufficiently serious that they raise doubts about his willingness to follow the law in the future or this Court's judge's Orders. A sentence of 37 months' of incarceration will send an appropriate message that Shively must never repeat this conduct.

E.     **The Importance of the Guidelines**

"The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate." *Rita v. United*

*States*, 551 U.S. 338, 349 (2007). As required by Congress, the Commission has "'modif[ied] and adjust[ed] past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like.'" *Kimbrough v. United States*, 552 U.S. 85, 96 (2007) (quoting *Rita*, 551 U.S. at 349); 28 U.S.C. § 994(m). In so doing, the Commission "has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by professional staff with appropriate expertise,'" and "to formulate and constantly refine national sentencing standards." *Kimbrough*, 552 U.S. at 108 (cleaned up). Accordingly, courts must give "respectful consideration to the Guidelines." *Id.* at 101.

### F.    Unwarranted Sentencing Disparities

Section 3553(a)(6) of Title 18 directs a sentencing court to "consider … the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." So long as the sentencing court "correctly calculate[s] and carefully review[s] the Guidelines range, [it] necessarily [gives] significant weight and consideration to the need to avoid unwarranted disparities" because "avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges." *Gall v. United States*, 552 U.S. 38, 54 (2007). In short, "the Sentencing Guidelines are themselves an anti-disparity formula." *United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017); *accord* United States v. Sanchez, 989 F.3d 523, 540 (7th Cir. 2021). Consequently, a sentence within the Guidelines range will ordinarily not result in an unwarranted disparity.[11] *See United States v. Smocks*, D.D.C. 21-cr-198 (TSC) at 49 ("as far as disparity goes, . . . I am being asked to give a

---

[11]   If anything, the Guidelines ranges in Capitol siege cases are more likely to understate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31-FYP, Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

sentence well within the guideline range, and I intend to give a sentence within the guideline range.") (statement of Judge Chutkan).

Moreover, Section 3553(a)(6) does not limit the sentencing court's broad discretion "to impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The "open-ended" nature of the Section 3553(a) factors means that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095. "As the qualifier 'unwarranted' reflects, this provision leaves plenty of room for differences in sentences when warranted under the circumstances." *United States v. Brown*, 732 F.3d 781, 788 (7th Cir. 2013) [12].

In cases for which the Sentencing Guidelines apply, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses

---

[12]  If anything, the Guidelines ranges in Capitol siege cases are more likely to understate than overstate the severity of the offense conduct. *See United States v. Knutson*, D.D.C. 22-cr-31 (FYP), Aug. 26, 2022 Sent. Hrg. Tr. at 24-25 ("If anything, the guideline range underrepresents the seriousness of [the defendant's] conduct because it does not consider the context of the mob violence that took place on January 6th of 2021.") (statement of Judge Pan).

and offenders similarly." *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009); *see id*. ("A sentence within a Guideline range 'necessarily' complies with § 3553(a)(6).").

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.[13]

In *U.S. v. Scott Fairlamb*, 1:21-CR-00120 (RCL), the defendant, similar to Shively here, followed soon after a breach (entered the Senate Wing door with a police baton about one minute post-breach), assaulted an officer (punched a cop in the face and pushed him), had statements suggesting he was proud of what he did on January 6, and destroyed evidence. Fairlamb pled guilty to two counts – one count of assaulting, resisting, or impeding certain officers (18 U.S.C. § 111(a)(1)) and one count of obstructing an official proceeding (18 U.S.C. § 1512(c)(2)). Judge Lamberth sentenced Fairlamb to 41 months' incarceration, within the estimated Guidelines range. Fairlamb is somewhat distinguishable because he followed soon after a breach of the actual Capitol building, while Shively merely followed a breach of the barricades cordoning off the restricted Capitol grounds. However, Shively assaulted no less than four police officers while on restricted Capitol grounds (Officer S.L., Officer N.E.T., the officer whom he hit with the officer's own police baton, and at least one officer whom he kicked with his boot). Accordingly, a sentence at the high end of Shively's Guidelines range would be appropriate.

In *U.S. v. Duke Wilson*, 1:21-CR-00345 (RCL), the defendant, similar to Shively here, violently attacked police officers defending the Capitol (by punching them, attempting to take their shields, and throwing an array of objects at them).   Wilson pled guilty to two counts – one count

---

[13]  A table outlining the sentences imposed in all Capitol riot cases to date has been included as an attachment to this memorandum.

of assaulting, resisting, or impeding certain officers (18 U.S.C. § 111(a)(1)) and one count of obstructing an official proceeding (18 U.S.C. § 1512(c)(2)). Judge Lamberth sentenced Wilson to 51 months' incarceration, at the high end of the estimated 41-to-51 months Guidelines range, despite Wilson being 68 years old.   While Wilson is somewhat distinguishable because he also attempted to keep an entrance door to the Capitol Building open so that rioters could further engage officers, Wilson, unlike Shively, did not interview with CNN right after his assaults and laud his abhorrent.

In *U.S. v. Howard Richardson*, 1:21-CR-00721 (CKK), the defendant, similar to Shively here, violently attacked police officers defending the Capitol (using a metal pole to strike an officer three times and helping a group of rioters force a very large metal billboard into the same line of besieged officers). Wilson pled guilty to assaulting, resisting, or impeding certain officers (18 U.S.C. § 111(a)(1)). This Court sentenced Wilson to 46 months' incarceration, at the high end of the estimated 37-to-46 months Guidelines range, despite Wilson being 68 years old.   While Wilson is somewhat distinguishable because he used a dangerous weapon and had pending state court cases, unlike Shively, assaulted at least four police officers did not interview with CNN right after his assaults and laud his abhorrent.

Accordingly, a sentence of 37 months' incarceration in the instant case, at the high end of the Guidelines range, is prudent.

## VII.   RESTITUTION

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639

F.3d 1093, 1096 (D.C. Cir. 2011).[14] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990), identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2), and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The victims in this case, MPD Officer N.E.T. and USCP Officer S.L., did not suffer bodily injury as a result of Shively's assault. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Shively must pay $2,000 in restitution to the Architect of the Capitol, which reflects in part the role Shively played in the riot on January 6.[15] *See* Plea Agreement at ¶ 12.   As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,881,360.20" in damages, a figure based on loss estimates supplied by the Architect of the Capitol in April 2022. *Id.* Shively's restitution payment must be made to the Department of Treasury, which will forward the payment to the Architect of the Capitol. *See* PSR ¶ 134.

---

[14] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), which "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, does not apply here.   *See* 18 U.S.C. § 3663A(c)(1).

[15] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

## VIII.   FINE

Shively's convictions under Section 111 subject him to a statutory maximum fine of $250,000. *See* 18 U.S.C. § 3571(b)(3). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). In assessing a defendant's income and earning capacity, a sentencing court properly considers whether a defendant can or has sought to "capitalize" on a crime that "intrigue[s]" the "American public." *United States v. Seale*, 20 F.3d 1279, 1284-86 (3d Cir. 1994).

A $20,000 fine is appropriate in this case. As the PSR notes, a financial campaign created by Jennifer Brown on behalf of Shively (https://www.givesendgo.com/g39xw) has raised substantial funds for Shively (PSR ¶ 101), under the title, "Bart Shively-Help a J6 Patriot." As of January 10, 2023, the webpage for this campaign indicated that $21,046 had been raised for Shively. The webpage does not specify exactly how the money collected will be used by Shively, but notes that "[e]very dollar you give will be used to rebuild Bart[ Shively]'s life and support a prooud (sic) veteran."[16]. Shively should not be able to "capitalize" on his participation in the Capitol breach in this way. Indeed, other judges in this district have levied fines in January 6 cases where the circumstances warranted it. *See, e.g.*, *United States v. Williams*, 21-cr-377-BAH (imposing $5,000 fine on § 1512(c)(2) conviction); *United States v. Gold*, 21-cr-85-CRC (imposing $9,500 fine where defendant used court-appointed attorneys but did not pay them after raising substantial funds for purported legal defense); *cf. United States v. Fairlamb*, 21-cr-120-

---

[16]  The webpage notes that "Bart [Shively] is currently undergoing chemotherapy while incarcerated. Recently, the V.A. tried to deny him medical treatment."   However, the webpage does not specify (1) if Shively was actually denied medical treatment by the V.A. or (2) if the money collected would be used for Shively's medical treatment, for other expenses determined by Shively, or for both.

RCL (did not impose fine after finding defendant did not have ability to pay, given that he had lost his business (a gym) and was at risk of losing his house). A court-ordered fine would serve to negate any attempts by Shively to capitalize on his participation in the Capitol assault.

## IX.    CONCLUSION

For the reasons set forth above, the government asks that the Court impose a Guidelines sentence of 37 months' imprisonment on Counts 1 and 2, three years of supervised release, restitution of $2,000, a $20,000 fine, and the mandatory $100 special assessment for each count of conviction.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By:     */s/ Emory V. Cole*
EMORY V. COLE
PA Bar No. 49136
Assistant United States Attorney
U.S. Attorney's Office
601 D Street, N.W.
Washington, D.C.   20530
Office: 202-252-7692
Email: Emory.Cole@usdoj.gov