**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**          :

          **v.**                    :          **21-CR-151-CKK**

**BARTON SHIVELY**                    :

### MOTION FOR ORDER OF RECUSAL AND DISQUALIFICATION AND REASSIGNMENT TO ANOTHER JUDGE IN THE DISTRICT

The defendant, Mr. Barton Shively, respectfully moves for this Court to recuse and disqualify herself from his sentencing hearing, pursuant to 28 U.S.C. § 455(a) and the Canons of the Code of Conduct for United States Judges.

In support therefore, on information and belief, the defendant submits the following, through counsel:

### Summary of Argument

This case, like all criminal cases and especially those criminal cases that arise from the January 6, 2021 events, is notable publicly for citizens across the country who hold a wide range of views. For the defendant, Barton Shively, with his awareness of the fragility of his health and diminished lifespan, this public interest is background to the sentencing's personal importance. Put simply, his sentence matters. He does not want to die in prison. What may seem a small difference in time– months or even days– could mean the difference between Mr. Shively living beyond his sentence behind bars or with his sister and hometown friends. He knows that he will be sentenced to prison time. When that happens, he wants and deserves

1

to receive a sentencing hearing and decision that both is *and appears to* be fair and untainted by the possibility of any bias –including bias unknown, implicit, or even believed-put-aside of his sentencing judge.

This Court should recuse and disqualify herself from Barton Shively's case, pursuant to 28 U.S.C. §§ 455(a) and the Canons of the Code of Conduct for United States Judges because the Court's impartiality might reasonably be questioned and because the Court obtained and possesses personal knowledge of disputed evidentiary facts related to Mr. Shively's sentencing. Unbeknownst to Mr. Shively until the day before his February 3, 2023 sentencing hearing, the Court and the U.S. Marshall had an *ex parte* communication concerning Mr. Shively's alleged participation in a riot at the Department of Corrections ("DOC"). And unbeknownst to Mr. Shively, this Court followed that *ex parte* interaction with its own initiation of separate and additional *ex parte* communications with the DOC, wherein the Court requested the DOC to send directly to it certain institutional and/or disciplinary records of Mr. Shively. The Court then reviewed the content of a DOC incident report provided *ex parte*.

While Mr. Shively has no reason to doubt the Court's actual impartiality, the receipt of the information, the requesting of additional information without advance notice to the parties, the review of such information, and the long-delayed opportunity for Mr. Shively to address the series of *ex parte* actions undermine the integrity of Mr. Shively's current and future proceedings before this Court. To be sure, Mr. Shively has a right to legal proceedings that not only are fair, but also appear to him and the public to be fair. The problematic *ex parte* actions disrupt that right; and, as

a result, Mr. Shively, his family, and the public might reasonably question the Court's impartiality and the fairness and reasonableness of the sentence received by Mr. Shively. Accordingly, after due consideration, the defense has concluded, respectfully, that this Court has no option but to disqualify herself from Mr. Shively's case, with his case handled by another member of the District Court.

## Statement of Facts

Correspondence among the Court, undersigned counsel, and the government indicated that the Court independently investigated relevant facts pertaining to the case not presented by either party, with the explicit intention to weigh those facts in determining Mr. Shively sentence, and did not promptly inform the parties of its receipt of relevant factual information and independent investigation until months had passed and it was the eve of the scheduled sentencing hearing.

On February 3, 2023, Barton Shively was scheduled to be sentenced for two counts of assault on a federal officer that occurred on January 6, 2021 outside the U.S. Capitol amidst a violent outburst of protest by citizens (egged-on by President Trump and members of his inner circle falsely claiming that that there was rampant voter fraud in the presidential election and that the election was stolen) who came to Washington, D.C. to attend a "Stop the Steal" rally and who ended up traveling in masse to the Capitol where the ballot certification was scheduled to occur.[1] Mr.

---

[1] Mr. Shively was one of millions of Americans who believed Mr. Trump's claims of voter fraud, including prominent elected officials. To this day, sitting members of Congress continue to dispute the election results. *See e.g.*, James Bickerton, *Full list of election deniers who won their races*, NEWSWEEK, February 5, 2023.

Shively's sentencing follows his entering guilty pleas on September 19, 2022 before this Court.

On February 2, 2023, the Court emailed the parties in regard to records that it had received directly from the D.C. Department of Corrections ("DOC"). The entire February 2, 2023 email correspondence among the Court and the parties is attached as Exhibit 1 to this Motion. The DOC records provided by the Court to the parties is attached under seal as Exhibit 2. Specifically, the Court wrote:

> The Court received an incident report from D.C. DOC this morning alleging that Mr. Shively, with others and among other things, incited a riot while in pretrial detention at CTF in September 2022. Chambers has attached the entire report[2] here, except for medical information on Mr. Shively and other detainees, which the Court views as unnecessary and ungermane. The Court relies on behavior while in pretrial detention, good and bad, for the purposes of sentencing and may address this incident report tomorrow during the sentencing hearing.

Exhibit 1. In response to a request as to the process by which the Court received the records, the Court wrote:

> [U.S.] Marshal Ruffin notified the judges of the District Court last year that there had been a significant incident at CTF and identified those allegedly involved. Marshal Ruffin suggested that those allegedly involved might be moved to different facilities or put in more restrictive housing in their present facility because DOC purportedly viewed them at the time as particularly dangerous.[3] The Marshals only had an incomplete and unsigned report from DOC and directed Chambers to DOC for the full report. Because the Court can and does consider disciplinary infractions (or the lack thereof) as part of the considerations of sentencing (e.g., the Court may give credit if there were no

---

[2]Upon review, the incident report received by the Court and provided to the parties appears incomplete. Counsel is endeavoring to obtain the missing documentation, which counsel believes will be favorable and mitigating for Mr. Shively.

[3] Upon review and information and belief, DOC did not move Mr. Shively to a different facility or put him in more restrictive housing.

infractions), the Court requested the full incident report from DOC, which the Court is now sharing.

*Id.* The Court subsequently wrote that it wanted to give the parties time to assess the materials prior to sentencing, if sought:

> The Court has directed Chambers to inform you that it intends for defense counsel, Government counsel, and Mr. Shively himself to have sufficient time to review the incident report that the Court only received this morning.  If such additional time is, in fact, necessary, the Court will continue the sentencing hearing upon the receipt of a motion for such relief.  The Court recently vacated a trial set for the week of February 20 (President's Day) and has a substantial amount of availability from that date through the rest of the month

*Id.* Thereafter, upon receipt of Mr. Shively's consent motion to continue, the Court continued his sentencing hearing to February 28, 2023.

The communications from the Court make certain events clear, while other aspects are less certain or known. It appears that the communication started with U.S. Marshal Ruffin to all members of the Court. Marshal Ruffin identified Mr. Shively as someone, among others specifically named, allegedly involved. The specific language used/information that he provided to the Court and any specific response by the Court is unknown.

It is unclear exactly when the Court received information that Mr. Shively was allegedly involved in a significant incident. The Court's email says that it received the information in the fall. According to the report provided in Exhibit 2, the incident was September 5, 2022, and the cover report of the materials is dated September 11, 2022. Mr. Shively entered his guilty plea on September 19, 2022. It is unclear if the Court had any of this information at the time of his guilty plea hearing. In any event,

the Court did not advise the parties as to the information it received from Marshal Ruffin in the fall. The Court first advised the parties on February 2.

The emails do not reflect if partial or incomplete reports that Marshall Ruffin had were themselves provided to the Court or if the content therein were provided. These versions of the report referenced by Marshall Ruffin do not appear to be among those that the Court gave to the parties on February 2 and that are attached as Exhibit 2.

The emails reflect that Marshall Ruffin directed the Court to communicate with the DOC to receive reports if it wished and that this Court did so, receiving reports on February 2. The emails do not reflect when the Court contacted DOC or the content of communications that it had with DOC about these records. It is unclear if the Court had requested the incident report at the time of the guilty plea hearing or prior to the deadlines for submission of the government and defense sentencing memos on January 13, 2023 and January 20, 2023, respectively, or how far in advance of Mr. Shively's sentencing hearing the Court requested DOC to send the reports directly to it. Mr. Shively's sentencing memo (and supplement) were drafted and submitted without knowledge of the *ex parte* communication that the Court had with the U.S. Marshal in the fall and of the Court's request for, and review of, an incident report relating to the allegation, which was first reported to the parties on February 2.

While the record is clear that this Court independently, without first consulting with the parties, contacted DOC to obtain a copy of the incident report for

the Court, the record is unclear if any other judge in the district equally did so. Counsel has reviewed the electronic dockets of the other individuals named in Exhibit 2, as reflected on the cover sheet of that exhibit. Each of those defendants appeared before a different judge. One of those defendants has since been sentenced. One of those defendants has since been granted pretrial release. The third defendant remains detained pretrial. The contents of the dockets of the defendant who has been sentenced and of the defendant who have been released do not mention a the incident or any records relating to the incident. The defendant who is currently detained raised the incident in a recent motion for bond review, alleging fault with the correctional officer involved that the officer was removed from duty. That defendant raises the event because he claims that he was punitively transferred to another facility where his contact with his attorney and ability to review discovery pretrial is limited. From these public records, one can reasonably conclude that after receiving the message from Marshal Ruffin, this Court is the only judge in the district to reach out to the DOC to request provision of the records for independent, *ex parte* review.

This Motion follows.

## Legal Argument

Even though this Court did not initiate contact with the U.S. Marshal, that belatedly disclosed contact, together with the Court's unusual, improper action to independently investigate the allegation, leads to the need for the Court to recuse and disqualify herself from Mr. Shively's case. Investigation is the duty of the parties; the absence of such investigation allows the Court to maintain both the status and

the appearance of being a neutral arbiter. When the Court appears to depart from its role as a neutral arbiter, the Court raises valid questions about her ability to preside fairly and impartially. Thus, the contacts and investigation here require recusal and disqualification under 28 U.S.C. § 455(a). Further, recusal and disqualification are supported by this Court's ethical obligations, particularly Canons 3(a)(4) and 3(c)(1)(a) of the Code Conduct for United States Judges, which are enforced through § 455(a), and by the principles of the Due Process Clause of the Fifth Amendment. *See, e.g.*, *In re Murchison,* 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process.").[4]

"The very purpose of § 455(a) is to promote confidence in the judiciary by avoiding even the appearance of impropriety wherever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1985). Section 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States *shall* disqualify [her]self in any proceeding in which [her] *impartiality might reasonably be questioned*." U.S.C. § 455(a) (emphasis added).[5]

In assessing § 455(a) motions for recusal, the D.C. Circuit applies an objective standard. "Recusal is required when 'a reasonable and informed observer would

---

[4] Due process "may sometimes bar trial by judges … who would do their best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way, 'justice must satisfy the appearance of justice.'" *Id.* at 136 (quoting O*ffutt v. United States*, 348 U.S. 11, 14 (1954)). As a result, due process may "sometimes [require the recusal of] judges who have no actual bias and would do their very best to weigh the scales of justice equally between contending parties." *Id*.

[5] This motion is not made pursuant to § 455(b)(1), which requires a showing of actual bias and which is not alleged.

question the judge's impartiality.'" *S.E.C. v. Loving Spirit Found., Inc.*, 392 F.3d 486, 493 (D.C. Cir. 2004) (quoting *United States v. Microsoft Corp.*, 253 F.3d 34 114 (D.C. Cir. 2001) (*en banc*)). *See United States v. Heldt*, 668 F.2d 1238, 1271 (D.C. Cir. 1981) (objective standard; "a showing of an appearance of bias or prejudice sufficient to permit the average citizen reasonably to question a judge's impartiality is all that must be demonstrated to compel recusal under section 455"). The proponent must demonstrate the court's reliance on an "extrajudicial source" that creates an appearance of partiality. *Id.* at 1272.[6] "[O]pinions formed by the judge of the basis of facts introduced or events occurring in course of the current proceedings … do not constitute a basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 554 (1994), *cited in United States v. Edwards*, 994 F. Supp.2d 11, 22 (D.D.C. 2014). The *ex parte* receipt and retention of factual materials from a third party relating to allegations and decisions in the case is not "good practice," creates the appearance of bias, and violates the express statutory standard for recusal. *United States v. Van Griffin*, 874 F.2d 634, 636, 637 (9th Cir. 1989).

The comment to Canon 1 of the Code of Conduct begins, "Deference to the judgments and rulings of courts depends on public confidence in the integrity and independence of judges." Canon 1, cmt. Code of Conduct for United States Judges. "[V]iolation of this Code diminishes public confidence in the judiciary and injures our

---

[6]Extra-judicial sources exist here in the communication from the U.S. Marshall and, notably, the actual incident report received and reviewed by the Court. Where no extra-judicial source exists, an alternative basis is "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 554 (1994). Mr. Shively does not proceed under that alternative theory.

system of government under law." *Id.* "A judge … should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." *Id.*, Canon 2(A). "[A] judge should not initiate, permit, or consider *ex parte* communications or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers. If a judge receives an unauthorized ex parte communication bearing on the substance of a matter, the judge should *promptly* notify the parties of the subject matter of the communication and allow the parties an opportunity to respond, if requested." *Id.*, Canon 3(A)(4) (emphasis added). "The restriction on *ex parte* communications includes communications from lawyers, law teachers, and others who are not participants in the proceedings" and applies to the judge's law clerks and other court personnel. *Id.*, cmt. "A judge shall disqualify [her]self in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." *Id.* Canon 3(C)(1)(a).

Because the Code of Conduct contains no enforcement mechanism, § 455(a)'s recusal provision is an available remedial measure. *Microsoft Corp.*, 253 F.3d at 114 "[F]ederal judges must maintain the appearance of impartiality because '[d]eference to the judgements and rulings of courts depends upon public confidence in the integrity and independence of judges.'" *Id.* at 115 (quotation omitted). "[V]iolations of

the Code of Conduct may give rise to a violation of § 455(a) if doubt is cast on the integrity of the judicial process." *Id.* at 114.

Here, the Court acquired, requested, read, and maintained extra-judicial factual information: the report from Marshal Ruffin that Mr. Shively had been involved in a significant incident and the lengthy DOC incident report. The Court acquired the DOC report by communicating itself directly with the DOC. The Court did not promptly tell the parties about the information received from DOC, as the Court did not tell the parties until early February months after receiving the information in the fall. The Court did not receive this information from either party, or from the probation department. The Court received it because the Court conducted its own investigation.

Mr. Shively is prejudiced by the Court's initial receipt of information and by its subsequent independent investigation. The Court now has information that appears harmful to Mr. Shively for sentencing purposes. The report suggests that Mr. Shively participated in a riot while at DOC and was written-up for disciplinary infractions. The Court's failure to communicate to the parties in the fall about what the Marshal had stated prejudiced Mr. Shively, as did the Court's contacting the DOC without first (or even simultaneously) seeking the position of Mr. Shively and his counsel. There is an incomplete record as to the Court's communications with the Marshal and with the DOC and as to what parts of the DOC report it read. And while the Court ultimately disclosed, it did so in an extremely tardy manner – after Mr. Shively had researched, written, and filed his sentencing memo and after Mr. Shively

11

had researched, written, and filed his supplemental sentencing memo. Mr. Shively was unable to address the allegations in his sentencing materials and to include the allegations in his framing his sentencing request. Instead, the inflammatory allegations become the last thing received by the Court and that counsel addresses before the sentencing hearing – prejudicially highlighting negative sentencing information for Mr. Shively.

The analysis is straightforward: Is it a situation in which this Court's impartiality and fairness "might reasonably be questioned" by an objective observer? 28 U.S.C. § 455(a). For if so, recusal is mandatory. *Microsoft, Inc.*, 253 F.3d at 116. The standard – "might" – is a low one. It does not require conclusive, or even a preponderance of evidence of impartiality. Rather, it is an assessment of potentiality that some reasonable member of the public – even in error – could conclude unfairness in the proceedings. Even a judge who endeavors to be fair and is fair still must recuse if an objective outsider views the circumstances as one that potentially appears to be unfair.

Mr. Shively has not identified a federal case directly on point. The most similar case in this district appears to be *Edwards*, but that case is readily distinguished because the improper materials received by the Court (victim impact statements concerning unrelated events) were filed by the government, a party, "in the course of court proceedings in the matter." 994 F. Supp.2d at 22. The material was "properly presented in the course of court proceedings," *id.*, and therefore did not serve as the basis for recusal under § 455. This information was not presented in the course of

court proceedings; to the contrary, it was sought and obtained outside the judicial process. More analogous is a law enforcement report that a U.S. Magistrate Judge possessed during a bench trial in *Van Griffin*. While the record did not establish how that judge received the report and the judge said that he had not even read it, the Ninth Circuit found an appearance of partiality that led to the need for recusal under § 455(a). Recusal was necessary even though the report was virtually the same as the officer's testimony and no new facts were "in the report that could have influenced the magistrate." 874 F.2d at 637-38.

Various state courts from across the country have applied similar judicial codes of ethics and disqualification requirements to the federal standard to routinely require trial judges to disqualify themselves in circumstances like here. For example, in *Vent v. Alaska*, the appellate court addressed whether to vacate the trial court's decision denying an application for post-conviction relief because the trial judge conducted independent research into the facts – on-line research concerning prior testimony of a defendant's expert witness – and then relied on that research to reject the claims of ineffective assistance of counsel. *Vent v. Alaska*, 288 P.3d 752, 755-56 (Alaska Ct. App. 2012). Because "a reasonable person would question whether the judge made an impartial decision on [the defendant's] claims," the court of appeals disqualified the trial judge from the proceedings and vacated his decision. *Id.* at 757.

Similarly, in *Vermont v. Gokey*, relying upon a state evidentiary rule as opposed to a recusal statute, the Supreme Court of Vermont held that the trial court "stepped outside its role as impartial arbiter" when, in an effort to determine the

validity of a defendant's health concerns, the judge independently investigated a defendant's reaction to certain medication competence by calling a neighborhood pharmacy and by privately interviewing two officers who had transported the defendant to court without notice to or in the presence of either attorney and without any formal record. *Vermont v. Gokey*, 14 A.3d 243, 245, 248-49 (Vt. 2010). "[I]t is of no moment whether she considered what she learned through these contacts in making her ruling on defendant's competence, the Canon forbids virtually all such communication with a judge without the parties being present." *Id.* at 250. "The judge's gathering of information was done … with significant detriment to the court's appearance of impartiality." *Id.*

And as a third, more local illustrative example, in *In re M.C.*, the D.C. Court of Appeals held a trial judge improperly failed to recuse herself after receiving reading two *ex parte* emails from a fellow trial judge concerning a participant in the trial. *In re M.C.*, 8 A.3d 1215, 1227-30 (D.C. 2010). The Court of Appeals concluded that, under these circumstances, the trial judge's failure to recuse herself was error under the familiar standard that "recusal is *required* where the judge's impartiality would reasonably be questioned." *Id.* at 1230 (citation omitted). The court concluded that the trial judge's failure to recuse herself "erod[ed] the public's confidence in the judicial process," was prejudicial, and required a new trial. *Id.* at 1233.

The guiding principles of the Canons and the statutory recusal principles – integrity, impartiality, and avoidance of the appearance of impropriety – serve as daily reminders of the public trust placed in judges. These codified expectations also

exist to sensitize judges to the public's expectations of the judiciary. They thus are not just for the benefit of judges, but for the judged and the public at large. Careful mindfulness and adherence to the appearance of impartiality are especially important for this Court, and for the D.C. Circuit on review, given the public nature of the January 6 prosecutions and sentencing events. Every criminal sentencing event associated with this national event is reported to, and generates conversation among, the public. The public *must* have confidence in the fairness of these proceedings. The D.C. Circuit must, and will, protect that confidence. *See United States v. Munchel*, 991 F.3d 1273, 1284-85 (D.C. 2021) (federal courts in the circuit have a "grave constitutional obligation" to adhere to statutory protects when conducting proceedings concerning the January 6 riots). This Court must do so as well.

Given the circumstances where the Court received an *ex parte* communication relevant to Mr. Shively's sentencing hearing and then initiated another *ex parte* communication, without first advising the parties, to obtain and review more information related to the Court's factual determinations and sentencing judgment, and then *ex parte* read the requested incident report with an eye to how its contents might affect the Court's sentencing decision, an average, objective citizen "might reasonably question" this Court's ability to be impartial in this particular sentencing. Consequently, this Court must recuse and disqualify itself. Mr. Shively does not make this request lightly. He appreciated the Court's attention to his medical needs. He is not forum shopping. There are many judges on this Court, each has experience with

criminal cases generally and January 6 cases more specifically, and no other judge's impartiality might reasonably be questioned to the degree that current circumstances exist for this Court. Disqualification of this Court is necessary to ensure the appearance of justice.

## Conclusion

For the aforementioned reasons, the Court should order that she is disqualified and recused from this case and the case is assigned to another, objectively impartial judge in the district.

Respectfully submitted,

BARTON SHIVELY
By Counsel

_____/s/_____
Edward J. Ungvarsky, Esquire
DC Bar No. 45934
Ungvarsky Law, P.L.L.C.
421 King Street, Suite 505
Alexandria, Virginia 22314
Desk: 571/207-9710
Cell: 202/409-2084
Fax: 571/777-9933
ed@ungvarskylaw.com