**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**           :

              **v.**                          :           **21-CR-151-CKK**

**BARTON SHIVELY**                      :

**SUPPLEMENT TO MOTION FOR ORDER OF RECUSAL AND**
**DISQUALIFICATION AND REASSIGNMENT TO ANOTHER JUDGE IN**
**THE DISTRICT**

The developments at the February 24, 2023 hearing only reinforce the need for

this Court to disqualify itself from Barton Shively's sentencing hearing because the

Court's impartiality and fairness "might reasonably be questioned" by an objective

observer, and because Mr. Shively is prejudiced as a result of the Court's actions.[1]

Department of Corrections ("DOC") records – whether the ones received directly by

this Court and provided to the parties on February 1, 2023, the day before Mr.

Shively's sentencing hearing or similar ones received last week by U.S. Probation –

are only available to be considered at sentencing because of the Court's own proactive

steps to enable consideration of DOC disciplinary records – steps taken after the

Court learned of a concerning incident involving January 6 defendants housed within

---

[1] Counsel addresses prejudice because the Court seemed to address the issue of harm at the February 24, 2023 hearing. Yet, to be clear, the statute does not require prejudice or harm to the party who raises recusal based under § 455(a). Rather, the district judge "shall disqualify [her]self in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455.

the DOC and after the Court determined that it did not have, and wanted, any extant DOC disciplinary records relating to Mr. Shively.

Mr. Shively contended in his motion that there is an appearance of bias and partiality by the Court. His observation and contention are objectively reasonable. The two sets of DOC records, whether identical as is likely or not, are intrinsically linked together and inextricably linked to actions and decisions by this Court to have the records available to it in sentencing Mr. Shively. After February 24th, there are no doubts as to that improper appearance, and, accordingly, this Court must recuse and disqualify itself from his sentencing hearing.

While the timeline is unclear, what is clear is that the Court itself contacted the Department of Corrections to request records that relate to Mr. Shively's disciplinary record at DOC, and that this contact occurred after the Court received information about some problems among January 6 defendants within DOC. The Court's express purpose, as made clear in its two February 1, 2023 emails to the parties previously attached as an exhibit to Mr. Shively's motion, was to use disciplinary records in consideration of sentencing because the Court understood them potentially to relate to an alleged incitement to riot while in pretrial detention at CTF in September 2022 or potentially some other misconduct. Upon receipt of the DOC incident report, the Court reviewed the incident report sufficiently closely to distinguish between those portions that it reviewed necessary and germane and those portions that it "view[ed] unnecessary and ungermane" and withheld by redaction. *See* Exhibit 1 (first email from Court). The Court gave the impression that the

germane DOC incident report containing allegations of improper conduct by Mr. Shively that it received and provided to the parties was something it would consider in sentencing Mr. Shively the next day: "The Court relies on behavior wile in pretrial detention, good and bad, for the purposes of sentence and may address this incident report tomorrow during the sentencing hearing." *Id.*  In a second email, the Court reaffirmed that the detailed incident report alleging pretrial misconduct was a sentencing consideration. *Id.* (second email from Court). Neither the Court's first or second emails on February 1, 2023 referred to probation or the presentence report. Nonetheless, the reasonable understanding from the Court's emails was that the Court likely would rely upon an incident report, requested and received *ex parte* by the Court, that alleged that Mr. Shively had engaged in negative, violent conduct in the jail in sentencing him the next day.

If the defense had understood that the Court was not going to use the incident report that it itself had requested and received, then the defense would have proceeded to sentencing the next morning. But the Court's email reasonably suggested that it intended to rely upon the incident report and caused defense counsel to think that a continuance of sentencing might be necessary. More so, the Court sent a third email: "[I]t intends for defense counsel, Government counsel, and Mr. Shively himself to have sufficient time to review the incident report that the Court only received this morning. If such additional time is, in fact, necessary, the Court will continue the sentencing hearing upon the receipt of a motion for such relief." *Id.* (third email from Court). This third email too did not mention of probation or the PSR.

Defense counsel reasonably relied upon the three emails from the Court to seek the government's concurrence in a defense motion to continue the February 2, 2023 sentencing hearing rather than proceed forward upon receipt of DOC records alleging misconduct by Mr. Shively at CTF. The Court granted the defense motion and continued sentencing to February 28, 2023.

Mr. Shively subsequently moved to recuse and disqualify the Court. In a February 22, 2023 email to the parties, the Court advised, "[T]he Court intends to set a hearing to update and correct the factual record and to discuss the pending motion to recuse," said that probation would be at the hearing, sought the parties availability for a February 24, 2023 hearing. At the hearing, the Court stated that certain aspects of its February 1, 2023 emails were inaccurate statements authored by Court chambers staff without the Court's knowledge or approval. The Court further advised that probation had separately received records from DOC, and that probation was going to do an addendum to the PSR that accounted for the records it received. The Court advised that it did not know if probation had seen the records that the Court had received, did not know exactly what DOC records probation had received, and did not know if the DOC disciplinary records it and probation received were identical. The Court gave the sense that, but for its "assisting" probation acquire records that probation independently wanted by using the authority of the Court to request such records from DOC, that probation's request, receipt, and review of records was distinct from the Court as part of probation's investigatory role. The Court also noted that probation had not previously obtained DOC records for inclusion in the PSR in

4

this case or in any case of any type before in this district. The Court gave the impression that the very unusual step for probation to continue to investigate to update a PSR that had already been submitted as final was somehow unrelated to the Court's desire to see DOC records relating to Mr. Shively.

The record is confusing at best as to probation's role. When asked on February 24, 2023, the probation officer stated that she had only requested and received the records the same week as the February 24, 2023 hearing, estimating that her request was done on the Wednesday of the week (which would be February 22nd, the same day as the Court's email to counsel about scheduling a hearing with probation's presence). It is these records whose contents will inform the PSR as to Mr. Shively's DOC disciplinary record that the Court will consider for sentencing purposes.

Notably, probation did not possess these records as of Mr. Shively's February 2, 2023 sentencing hearing. If Mr. Shively had proceeded to sentencing on February 2, 2023, probation did not have possess records, and, according to the Court, the Court would not have considered the contents of any DOC records for sentencing. Accepting the Court's February 24th statement that it would not rely upon the records that it received directly from DOC on February 1st, Mr. Shively's counsel made a significant error in not proceeding forward to sentencing on February 2nd. But upon having itself received those records, a reasonable observer must be skeptical as to if the Court truly have gone forward without consideration of a known DOC incident report.

In any event, the appearance – if not the reality – is that any distinction between records received directly by the Court from DOC and records received by

probation from DOC is chimerical. This Court wanted to see Mr. Shively's disciplinary file, and one way or another, it was going to, and now will, consider such records. Once it was apparently realized to be improper to rely upon records that the Court requested and received *ex parte*, the Court may fail to see that it is also improper to rely upon the content of disciplinary records whose receipt was caused by the Court's initial improper action. One set of DOC disciplinary records simply substitutes for another, upon the Court's providing the first set to the parties that reasonably induced defense counsel to continue the sentencing hearing, which created the opportunity, unbeknownst to defense counsel, for the second set to be generated and incorporated into the formal sentencing record in substitution of the first. While perhaps unintentional, an objective observer might see this as an inadvertent bait-and-switch, which defense counsel acted-upon to Mr. Shively's detriment. At the very least, the Court must see that the circumstances might reasonably cause a wedge between Mr. Shively and his court-appointed defense counsel at a particularly auspicious moment of the representation.

The challenges to the Court's keeping the case for sentencing continue with a review of the timeline of communications and actions. It appears that the Court had communications of some type with the U.S. Marshall, U.S. Probation, and the D.C. Department of Corrections about Mr. Shively's record within DOC and about Mr. Shively's sentencing hearing. It also appears that at least U.S. Probation and the D.C. Department of Corrections had communications together about Mr. Shively. Of course, the supervisor of probation has not been heard from directly. Nor has the

General Counsel or anyone else from the Department of Corrections. Nor has the U.S. Marshall. For each, only limited hearsay understandings exist. The probation officer who was in the courtroom on February 24th, the author of the PSR, provided inconsistent information as to when probation requested Mr. Shively's records as to when the Court understood and reported that someone else from probation had said probation made its request to DOC. So much appears to have occurred *ex parte*, off-the-record, behind-closed-doors, whether by email or telephone – with none of it allowing for knowledge or input of Mr. Shively or his defense counsel. There is an appearance of improper communications and actions generally and of extrajudicial action as it relates to the Court's personal investigation to obtain Mr. Shively's DOC records. This Court has directed the ability for the parties to obtain an expedited transcript of the February 24th hearing and counsel may order it, but, with all respect, that hearing raised as many questions as to the how we got to this place as it answered.[2] Regrettably, the Court is inflicted with an appearance of partiality that

---

[2] The record is murky as the timing, form, and content of communications between and among the Court, the Department of Communications, U.S. Probation, and the U.S. Marshal. It appears that there were both phone calls and emails. If the Court is inclined to deny the motion to recuse and disqualify, the defense moves that the Court make as part of the record all written communications that relate to facts here between the Court and any representative of U.S. Probation (including the head of Probation and the specifically assigned PSR writer), between it and the Department of Corrections (including but not limited to the General Counsel), and between it and the U.S. Marshal. Similarly, if inclined to deny the motion, the defense moves that the Court order Department of Corrections, U.S. Probation, and the U.S. Marshal to provide copies of all email correspondence among each of them, and with the Court, for inclusion in the record for appellate review. And because, but for what appeared to be a contrary statement from the PSR writer as to when she initiated contact with the Department of Corrections for records there are no direct representations from the head of probation, the general counsel of DOC, and the U.S. Marshal, the defense

prejudices Mr. Shively, who now has an attorney with whom Mr. Shively reasonably has less confidence and trust, and who now is proceeding to sentencing with the impending inclusion of damaging disciplinary records that might otherwise not have been before the Court.

At the February 24 hearing, the Court referred to *United States v. Burger*, 964 F.2d 1065 (10th Cir. 1992). Respectfully, that case does not support denial of the motion. In *Burger*, *after* the defendant was sentenced, he moved for reconsideration and to recuse the sentencing court based upon the incorrect understanding taken from media reports that the district court itself directly received two letters from the FCIC related to restitution in advance of sentencing. In the wake of such gamesmanship, the district court denied the motion. Among the district court's finding, most significantly the court found that the "letters were not used in determining Burger's sentence," 64 F.2d at 1069 and that the sentence was based on "[the court's] personal knowledge derived from presiding over the lengthy trial of defendants' alleged co-conspirators, *id.* (quotation omitted). Additionally, the FDIC's letters were given to the probation department for inclusion in the PSR. *Id.* Applying a deferential standard of review, the Tenth Circuit held that the district court did not abuse its discretion in declining to recuse. *Id.*

---

moves that the Court order that each participant in the communications among each other and the Court concerning Mr. Shively's DOC record and/or sentencing submit a written statement about the communications, their timing, and their content for the appellate record.

Even putting aside the obvious differences that the motion to recuse was made after the *Burger* district court had sat through a lengthy trial and after the *Burger* district court had already imposed an unhappily-received sentence on the defendant, this record is materially different in significant ways, and the Court should fairly elect to recuse. Unlike the district judge in *Burger*, this Court itself initiated *ex parte* communication with the Department of Corrections. It was this Court's own actions that touched off the problem. And unlike in *Burger*, this Court itself had off-line communications with the U.S. Probation and with the Department of Correction about the information whose possession causes the need for recusal. While Probation may have had separate communications with the Department of Corrections, it is not at all clear that there was not some overlap in communications and some (perhaps unintentional and unanticipated) influence by the Court that led Probation to uniquely and particularly request Mr. Shively's records.

Here, the Court's actions appear to have intrinsically affected the receipt and presentation of the DOC records at Mr. Shively's sentencing hearing. If the Court had not taken such action, the DOC records would not have been possessed by the Court, either party, or probation prior to Mr. Shively's February 2, 2023 sentencing hearing. He would have already been sentenced, absent the records. But the chain of events starts with this Court's requesting Mr. Shively's DOC records and ends with this Court's ordering probation to file an addendum to the PSR to incorporate the records in the formal sentencing record for consideration at the sentencing hearing. *See* February 24, 2023 NEF. This Court, unlike that in *Burger*, has been hands-on, and

the Court's active involvement outside the knowledge of defense counsel has prejudiced Mr. Shively. Indeed, in denying the motion to recuse, the district court in *Burger* made clear that it had not relied upon those records in setting restitution; yet this Court has indicated the exact opposite: it fully intends to rely upon the content of any DOC records that it has ordered probation to review and incorporate in an updated PSR in sentencing Mr. Shively.

## Conclusion

Appearances may be deceiving. Appearances are not about the truth. They are about perception. The question is not whether the appearance of unfairness is an accurate one. The question is not whether the Court is in fact partial and biased against Mr. Shively. The question is whether this Court's impartiality "might reasonably be questioned." If so, this Court "shall" recuse itself.

The recusal standard is relatively low and mandatory because § 455(a) is designed "to promote confidence in the judiciary to avoiding even the appearance of impropriety wherever possible." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1985). It *is* possible to avoid the appearance of impropriety. There is no error or ethical lapse in recusing oneself when a fair-minded, respected judge intends impartiality but faces a factual record that raises reasonable questions to objective observers outside of chambers. It *is* possible to promote confidence in the judiciary. The Court's next step *is* simple. *Now*, before the sentencing hearing, and before any appeal, the Court can and should recuse and disqualify itself. To do otherwise simply

invites further objective speculation and skepticism about judicial bias affecting Mr.

Shively's case and sentence.

Respectfully submitted,

BARTON SHIVELY
     By Counsel


              /s/
_____
Edward J. Ungvarsky, Esquire
DC Bar No. 45934
Ungvarsky Law, P.L.L.C.
421 King Street, Suite 505
Alexandria, Virginia 22314
Desk: 571/207-9710
Cell: 202/409-2084
Fax: 571/777-9933
ed@ungvarskylaw.com