UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : 21-CR-151-CKK |
| BARTON SHIVELY | : |

### SECOND SUPPLEMENT TO MOTION FOR ORDER OF RECUSAL AND DISQUALIFICATION AND REASSIGNMENT TO ANOTHER JUDGE IN THE DISTRICT

Upon receiving and reviewing the transcript of the February 24, 2023 hearing on Mr. Shively's motion to recuse and disqualify, the defendant, Barton Shively, through counsel, respectfully supplements his motion to recuse and his supplemental motion to recuse, because the factual information related during the hearing advance the unfortunate situation that, even if unintentional, there is a reasonable appearance of bias and partiality by the Court that makes this Court an inappropriate forum for Mr. Shively's sentencing determination. Accordingly, this Court must recuse and disqualify itself from his sentencing hearing.

*First*, the transcript makes clear that it was *the Court*, not probation, that initiated inquiry to obtaining any disciplinary records of Mr. Shively. The Court "inquir[ed] of the probation officer in this case." 2/24/2023 Tr. at 3, ll. 24-25. After the presence report was filed in this case, the Court "contacted the probation officer and asked if she could access Mr. Shively's disciplinary records to include whatever information was in an addendum or supplement to his presentence report." *Id.* at 6,

1

ll. 17-21. The probation officer reportedly replied that probation could not timely obtain the records. *Id.* at 6-7. Thus, probation informed the Court that probation could not assist the Court as to the Court's inquiry. These appear to be, or include, unrecorded verbal communications.

*Second*, the Court then did not assist probation in getting records that *probation wanted* for sentencing. Probation's presentence report was already final, and probation had already submitted its sentencing recommendation to the Court. *See* ECF 53 (PSR) & 54 at 2 (probation's sentencing recommendation – "the recommended period of imprisonment of 30 months is sufficiently punitive to address the goals of sentencing"). It appears that before the Court spoke with the probation officer, probation had not even put in a request for Mr. Shively's disciplinary records from DOC. It was the Court that wanted the information and whose actions were undertaken to get records that the Court desired. Indeed, prior to Mr. Shively's case – that is, prior to the Court's inquiry of probation about getting these records in Mr. Shively's case – probation had reportedly "never been provided [DOC] disciplinary records," and had never incorporated such records in any presentence reports, according to the probation officer. *Id.* at 16, ll. 7-8. Rather, since the Court wanted the information and since probation did not access or use the information in its reports, the probation officer "suggested" that the Court request the records herself "since the Department of Corrections would be more likely to respond to a judge." *Id.* at 7, ll. 5-7. This again was probation's being responsive to the Court's inquiry of probation. And while the email, and the language of the email, is not part of the

record,[1] at some unknown subsequent time, probation apparently emailed the Court to "request" that the Court itself obtain the information. *Id.* at 7, ll. 7-9. The transcript then says that the Court "contacted the Department of Corrections" "at the direction of" probation. *Id.* at 7, ll. 19-21. Yet U.S. Probation does not have the authority to "direct" an Article III judge to do anything. Probation responds to directives by and assist federal judges, not the other way around.

With due respect to the Court's framing of the issue at the outset of the hearing that "there's a narrow question here whether a judge can assist the probation officer in obtaining relevant records for the presentence report that probation cannot practically access but the judge can without the judge having to recuse," *id.* at 2, ll. 22-24, that framing misunderstands the situation, perhaps because the Court is too close to it. The question is where the judge seeks certain records that may be relevant and is told by probation that probation cannot practically access the records and has not relied upon any such records in completing its report and submitting its recommendation and where the parties have not presented or relied upon the information, can the judge exercise extrajudicial action itself to contact the agency, business, or party that has the records and request delivery to the Court without the judge having to recuse? The answer is: No, the Court may not.

---

[1] Mr. Shively renews his request from his supplemental motion that all emails related to the Court's inquiry and receipt of his DOC records are made part of the record for appellate review in this case, if the Court denies his motion to recuse. *See* ECF 69 at 7 n.2.

The transcript also raises more questions than it answers about probation's inability to access the DOC records as stated at the hearing, because the record reveals that when such DOC records are requested, DOC in fact timely provides them. The first example is the Court's early January case, where defense counsel obtained the records from DOC. *Id.* at 6, ll. 7-12. Defense counsel gave those records to the government and to probation. *Id.* Probation "had checked it out, that he had no disciplinary record." *Id.* The second example is defense counsel here. Reviewing counsel's case file, counsel received the DOC records with a release from DOC in less than four calendar days: Counsel requested the records at Feb 20, 2023, 3:57 PM and received the records from DOC at Feb 24, 10:29 AM. Third, probation itself requested the records on Wednesday, February 22, 2023 and had received them by the time of the February 24th hearing. *Id.* at 35, l. 5. U.S. Probation simply had not sought any disciplinary records of Mr. Shively from DOC. It seems that probation may have assumed it could not obtain non-medical DOC records or did not previously know how to do it successfully, because such records *are* provided when requested. These examples, individually and collectively, reflect that the Court's calling DOC itself seems grounded in an inaccurate, sua sponte, *ex parte* factual finding of impracticality that would have reasonably benefitted from more circumspection before action.

*Third*, the transcript bears out that there is a direct but-for and proximate causal connection between the Court's actions in seeking to have DOC disciplinary records to review and probation's subsequently contacting DOC to get records sent to DOC. Put another way, the DOC records obtained by probation and now part of the

4

PSR are only part of the PSR because the Court started a chain of events that led probation to obtain the records. The Court is the party that initiated inquiry as to Mr. Shively's disciplinary records, not probation. The first event is that the Court contacted the probation officer. It was only *after* the Court contacted the probation officer that the chief of the probation office *then* spoke with the DOC General Counsel about probation's obtaining disciplinary records in cases moving forward. Id. at 3, ll. 24-25 ("On hearing about my inquiry of the probation officer in this case, he arranged …"). And it was only after hearing about this Court's inquiry of the probation officer in this case, that the chief of the probation officer then "requested the disciplinary records in this case." *Id.* at 4, l. 4. His request was not "on his own," *id.* at 4, l. 4, because he had never made such a request before. While the Court may not have expressly ordered probation to request Mr. Shively's DOC files or been actively part of conversations between the head of probation and DOC general counsel, the Court's desire to obtain the records and conversation with probation is what led to probation to talk about the topic in its office and probation's eventual receipt of the DOC records relied upon in the PSR addendum. Even if unintentionally, from the reasonable, objective outside perspective and not perhaps from the Court's well-intentioned, participatory perspective, the Court's inquiry thus did "prompt," *id.* at 33, l. 13, the inclusion of the DOC records in the presentence report because this Curt's inquiry inspired probation's actions that led probation to request DOC to provide it with the records for probation to complete an addendum that referenced the records that the Court indicated that it wanted done and that the Court ultimately ordered be done.

5

*Fourth*, the transcript shows that the Court's unusual proactive conduct here is outside what is reasonably understood as the traditional role of a trial judge. Trial judges rule on the matters that come before them. They determine the probative nature and relevance of facts after a party seeks to present information before a factfinder, traditionally after the other party objects. There are undoubtedly many aspects of a person's life that a sentencing judge may consider potentially probative or relevant. The parties investigate and present such matters. The probation officer does as well. Here, before the Court spoke to the probation officer, the probation officer had concluded that her report was final for the Court absent any DOC records. The government had not sought a subpoena duces tecum for any DOC records and had made no argument concerning Mr. Shively's pretrial detention conduct. The defense had not sought to present DOC records before the Court and in its 40-page sentencing memorandum had not argued that Mr. Shively's in-custody pretrial comportment warranted sentencing mitigation. The Court's extrajudicial inquiry that sought to obtain factual information is reasonably viewed as outside the role of a neutral arbiter.

The Court's experience with another case in early January 2023 reflects the expected, reasonable view of how material is gathered and presented for a sentencing hearing. There, the defense investigated and concluded that the defendant's DOC disciplinary records, or absence thereof, was probative and material as a mitigating factor for sentencing. The defense put forward the information, and gave the

government and probation time to check the information, which was done. The Court then was able to make a legal finding of positive jail adjustment and act accordingly.

*Fifth*, the transcript makes clear that the Court initiated its own contact with third parties – here, the USMS and then the DOC. *Id.* at 7, ll. 14-21. The manner of communication with the USMS is unclear. It is similarly unclear if the USMS provided to the Court the "incomplete and unsigned version" of the report, referenced by the Court in its second email to counsel that is part of Exhibit 1 to the Motion to Recuse. Clear is that the Court next herself directly contacted DOC for the records, and DOC provided a set of records to the Court. *Id.* at 7, ll. 19-21; *id.* at 36, ll. 18-20. While each of these agencies is part of the criminal legal system, they are also each an agency separate from the Court. The Court's action reasonably appears to be extra-judicial. It also raises the question as to the reasonable view of limits of Court emails and phone calls to obtain records that it thinks may be probative and relevant. Can the Court call the U.S. Army to ask for the DD-214 service record or to ask for the voluminous other personnel records? Can the Court call a substance abuse program to request records? Can the Court contact a private employer to say that a U.S. District Judge is calling to get information? Reasonable observers would say, respectfully, that whatever the Court's motivation – even if intended to assist an office whose job it is to assist the Court – such emails and phone calls to third parties constitute improper, extrajudicial action. Indeed, while it happened here, it is otherwise hard to fathom that the Court would reasonably view it appropriate to call a third party to get records about a defendant before the Court, even if probation had

7

told the Court that historically in the past it had trouble obtaining records from that third party. This is the first time that defense counsel has encountered the situation in over twenty-five years of federal and state trial practice.

*Sixth*, reasonable skepticism and grounds for recusal also arise from the Court's different descriptions as how it handled the records that DOC sent directly to it. During the February 24, 2023 hearing, the Court reported that the DOC records that it received directly were "sent *immediately* to both counsel." *Id.* at 7, ll. 21-22 (emphasis added); *see id.* at 36, ll. 19-21 (DOC material received by Court "was sent to both counsel *as soon as* I received it") (emphasis added). The Court suggested that it had not read or reviewed those records prior to sharing them with counsel. *Id.* at 13, ll. 14-15.

Yet an earlier record suggests that the Court did not immediately send the DOC records to counsel without the Court's first reviewing those records: on February 2nd, the Court wrote that it excised medical information "which the Court views as unnecessary and ungermane." Court's February 2, 2023 Email, attached as Exhibit to Motion to Recuse. That email suggest that the records were reviewed by the Court as part of a relevance analysis.[2] And those records were in fact redacted, with relevant records being sent and non-relevant records being excluded. While U.S. Probation apparently received a different set of records and relied upon those records in writing its PSR addendum, the reasonable appearance that the Court did review *ex parte*

---

[2] "Germane" is a synonym of "relevant." *See* Germane Definition & Meaning - Merriam-Webster.

8

DOC disciplinary records that are not presented to it by either party or by probation in the PSR addendum remains a concern.

It bears observing that those records received and potentially reviewed by the Court were particularly problematic because they did not include the records that the Adjustment Board had found Mr. Shively "not guilty" of incitement to riot – the allegation highlighted by the Court in its initial February 2nd email to counsel. If defense counsel had not followed up with the DOC to request the Adjustment Board findings, one reasonably can anticipate that incomplete records of an allegation, and not the determination itself, are what would have made their way into the presentence report addendum. The reasonable appearance of a discrepancy between whether the Court reviewed the records provided it by DOC in response to the Court's inquiry to DOC does not appear one that can be accounted for by Chambers-staff error. To the contrary, the record appears muddy at best as to the Court's review of those DOC records.

## Conclusion

This Court's impartiality in sentencing Mr. Shively "might reasonably be questioned" and, accordingly, this Court "shall" recuse itself. 28 U.S.C. § 455(a). In making this request, counsel and Mr. Shively are not reacting to an adverse legal ruling by the Court, such as the defendant in *United States v. Burger* and all-too-common other non-meritorious motions to recuse by criminal defendants and civil litigants aggrieved of proper judicial action taken in the regular course of proceedings. The defense's motion is grounded in the Court's perhaps well-

9

intentioned but still mistaken actual and apparent acting outside the judicial role in proactively seeking to obtain, and potentially to have reviewed, records about information that neither party nor the probation officer had presented before it.

Mr. Shively's motion to recuse is a serious one, not gamesmanship; the defense is not forum-shopping to another judge who may be perceived as more favorable to Mr. Shively at his sentencing hearing. The defense has no idea which of the many judges on this Court to which the case will be randomly assigned. And the defense is keenly aware that every judge on this Court is extremely busy, that no lawyer or judge welcomes cases transferred from a peer as opposed to those handled from the outset, and that prior to filing the motion to recuse, consideration had to be given whether a new judge might unconsciously look with disfavor on a defendant who raised an ethical concern about a judicial colleague.

Because Mr. Shively's case is one without co-defendants and a limited factual record, his case is not unduly burdensome for a new judge. On the other hand, his recusal motion already has caused delay in his sentencing hearing, and the defense is mindful that recusal and transfer of the case to another judge will cause additional delay in his sentencing hearing attributed to Mr. Shively's request. The delay conflicts with Mr. Shively's desire to be sentenced and transferred to the U.S. Bureau of Prisons as soon as possible to leave his current environment and to access improved medical care.[3] Nonetheless, his statutory and constitutional right to a legal

---

[3] Mr. Shively completed his first round of chemotherapy but has not had the follow-up treatment. For example, he did not receive his promised CAT scan in February, purportedly because of a change in medical staff that services DOC. He very much

proceeding that both is and appears to be fair is of paramount importance to him, his family and friends, and to the integrity of the criminal legal system.

With that backdrop, Mr. Shively and defense counsel are not unreasonable in seeking to ensure procedural fairness and reasonably impartial decision-making in what is one of the most important events in his life, the judicial decision as to how long he will be imprisoned before the (hopeful) release to re-engaging with the Veteran's Administration, addressing any illness caused him by the toxic water contamination at Fort Lejeune when he was in the Marine Corps, battling the cancer that endangers his life, and somehow re-establishing his life as a contributing member to his community in Central Pennsylvania.

With great respect and considered deliberation, the defendant respectfully submits that this Court should recuse and disqualify itself from his sentencing hearing based upon the reasonable appearance of partiality and bias.

                Respectfully submitted,

                BARTON SHIVELY
                    By Counsel

                _____/s/_____
                Edward J. Ungvarsky, Esquire
                DC Bar No. 45934
                Ungvarsky Law, P.L.L.C.
                421 King Street, Suite 505
                Alexandria, Virginia 22314
                Desk: 571/207-9710
                Cell: 202/409-2084

---

wants to depart DOC as soon as possible. At the sentencing hearing, counsel will request that the sentencing court recommend Federal Medical Center – Butner for service of his sentence in BOP.

Fax: 571/777-9933
ed@ungvarskylaw.com

12