<pre>
 1                  UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLUMBIA
 2    _____

 3    United States of America,    ) Criminal Action
                                   ) No. 1:21-cr-00151-CKK-1
 4                   Plaintiff,    )
                                   ) Motion to Recuse
 5    vs.                          )
                                   )
 6    Barton Wade Shively,         ) Washington, D.C.
                                   ) February 24, 2023
 7                   Defendant.    ) Time:  1:00 p.m.
      _____

 8
                  Transcript of Motion to Recuse
 9                        Held Before
             The Honorable Colleen Kollar-Kotelly
10             United States Senior District Judge

11
                     A P P E A R A N C E S
12
      For the Government:    Emory V. Cole
13                           UNITED STATES ATTORNEY'S OFFICE
                             FOR THE DISTRICT OF COLUMBIA
14                           601 D Street, Northwest
                             Washington, D.C. 20579
15
      For the Defendant:     Edward J. Ungvarsky
16                           UNGVARSKY LAW, PLLC
                             421 King Street, Suite 505
17                           Alexandria, Virginia 22314

18    Also Present:          Crystal Lustig, Probation Officer

19    _____
      Stenographic Official Court Reporter:
20                           Nancy J. Meyer
                             Registered Diplomate Reporter
21                           Certified Realtime Reporter
                             333 Constitution Avenue, Northwest
22                           Washington, D.C. 20001
                             202-354-3118
23
      Proceedings recorded by mechanical stenography.  Transcript
24    produced by computer-aided transcription.

25
</pre>

```
1                    P R O C E E D I N G S

2          THE COURTROOM DEPUTY:  Criminal Case 21-151, the

3     United States v. Barton Shively.

4          Counsel, would you please identify yourself for the

5     record, starting with the government.

6          THE COURT:  Let me indicate that you can take your

7     mask off if you're going to be speaking because it's hard to

8     get a record, frankly.

9          MR. COLE:  Good afternoon, Your Honor.  I am

10    Emory V. Cole.  It's good to see you.

11         MR. UNGVARSKY:  Edward Ungvarsky on behalf of Barton

12    Shively, who is present.  Good afternoon.

13         THE COURT:  All right.  Good afternoon.

14         So we're here today on Mr. Shively's motion to recuse.

15    Based on the pleading, I'm assuming, Counsel, that you would

16    agree that information regarding disciplinary actions or lack

17    thereof for those detained is probative and relevant in

18    sentencing proceedings, and this information may be included in

19    a presentence report.  So I'll ask you at the end if you

20    disagree with that.  From reading your pleading, that didn't

21    seem to be at issue.

22         So there's a narrow question here whether a judge can

23    assist the probation office in obtaining relevant records for

24    the presentence report that probation cannot practicably access

25    but the judge can without the judge having to recuse
```

1  themselves.

2      So let me go through a couple of points, and then I do

3  need to correct the record.

4      First, for defendant's release into the community, we

5  get pretrial service's reports on compliance with the

6  conditions of release.  And for detained defendants, the

7  disciplinary records, or lack thereof, are all relevant, both

8  pretrial, as well as the disciplinary records -- or if there

9  aren't any -- are all relevant and probative on the issue of

10  whether the defendant is going to be deterred from further

11  criminal conduct or would comply with court orders.

12      And deterrence is a factor for the Court to consider in

13  sentencing pursuant to 18 U.S.C. 3553(a), which sets out

14  various factors for me to consider.  Pretrial service reports

15  are readily available to the Court.

16      As to disciplinary records for those detained, according

17  to Brian Shaffer, who is the chief of our probation office, the

18  Bureau of Prisons records are easily accessible, but the

19  Department of Corrections records are difficult to access and

20  have -- are difficult to also get them in a timely manner, at

21  least in the past.  Mr. Shaffer considers the disciplinary

22  records, or lack of them, both probative and relevant on the

23  issue of deterrence.

24      On hearing about my inquiry of the probation officer in

25  this case, he arranged separately, unbeknownst to me, with the

1  legal counsel for the Department of Corrections to obtain these

2  disciplinary records for all defendants in the future -- for

3  inclusion in all presentence reports in the future.  He also

4  independently requested the disciplinary records in this case.

5  Again, on his own.

6      I would say that both Mr. Shaffer and Mr. Glover, who is

7  the legal counsel, are on a court interagency committee which

8  deals with Department of Corrections issues as well as some

9  other issues, and that is what, evidently, they had in a

10  conversation because both of them are on the same committee,

11  from what I understand from Mr. Shaffer.

12      Second, both Mr. Shaffer and, frankly, most, if all not

13  all, judges are of the view that this information is best

14  included in writing in the presentence reports and provided in

15  advance of sentencing instead of brought up orally at the

16  sentencing proceedings, which has tended to be the case with

17  the Department of Corrections.

18      Third, this case illustrates how a judge at the request

19  of the probation office can assist in gathering relevant

20  information for a presentence report and not be acting

21  extrajudicially.

22      Now, as to the facts in this case, I need to correct an

23  email that was sent from chambers with the disciplinary record

24  provided by the Department of Corrections that stated

25  erroneously that the email in September of 2022, regarding

1    some incidents at the Department of Corrections, which was

2    reported by Lamont Ruffin, who is the Chief U.S. Marshal for

3    D.C., including names of defendants and case numbers.  It did

4    not.

5        Marshal Ruffin sends from time to time to our

6    Chief Judge an email that sets out incidents of note that have

7    occurred at the Department of Corrections or elsewhere where

8    they've placed defendants and/or if there's issues of

9    conditions.  The Chief Judge generally sends the email out to

10   all of the judges.

11       The email that I received in chambers, I read, received,

12   and didn't share with my staff.  So that's why there was some

13   confusion here.

14       Mr. Ruffin sends out these emails reporting these

15   notable incidents at the Department of Corrections involving

16   defendants detained by order of the federal court.  He has not

17   included names and case numbers with these emails.  And I,

18   frankly, contacted him and confirmed that I was accurate as to

19   this particular email.  The judge would then be contacted if

20   the defendant at issue was going to be moved to another

21   facility.  I received no such notice; so I made no further

22   inquiry.

23       Therefore, I had no knowledge of the defendant having a

24   disciplinary record when I accepted his plea, scheduled the

25   sentencing, and ordered the presentence report.

1        Now, from time to time, in other criminal cases I've

2    been informed orally for the Department of Corrections or in

3    writing for the Bureau of Prisons -- because that's been more

4    accessible -- that there are no disciplinary records for a

5    detained defendant for consideration on the issue of

6    deterrence.

7        And such was the case in which I sentenced a defendant

8    in early January.  He'd been detained for a long time.  I was

9    informed orally by defense counsel who'd obtained the record

10   from the Department of Corrections and who had shared it with

11   the prosecutor and probation, who had checked it out, that he

12   had no disciplinary record.  So I considered this information

13   in evaluating the deterrence factor in his sentencing and

14   reduced his sentence for various reasons, including his lack of

15   a disciplinary record.

16       In this case, the presentence report was filed in

17   December.  I had no knowledge of anything.  In January, I

18   contacted the probation officer and asked if she could access

19   Mr. Shively's disciplinary records to include whatever the

20   information was in an addendum or supplement to his presentence

21   report.  At that time I had no information as to whether or not

22   he did or didn't have a disciplinary record.  I wanted

23   something in writing in advance of sentencing that addressed

24   this issue to consider on the deterrence issue.  I was told

25   they were unable to access the information, and it was

1    suggested --

2         God bless you.  God bless you.

3              MR. COLE:  I'm vaccinated, Your Honor.

4              THE COURT:  All right.  I was told they were unable

5    to access the information and suggested that I request it,

6    since the Department of Corrections would be more likely to

7    respond to a judge.  A later email from probation made the

8    same request, that I obtain the information on behalf of

9    probation.

10         Because the probation office requested that I assist in

11   obtaining the information, chambers then -- this is the first

12   time -- contacted the U.S. Marshals Service as to whether or

13   not they were aware of any disciplinary incidents.

14         For the first time, I learned from the Marshals Service

15   that there was a disciplinary record for Mr. Shively and that

16   it actually related back to this September 2022 incident

17   reported in the email from Marshal Ruffin, but the

18   U.S. Marshals Service did not have a complete report.

19         At that point chambers, at the direction of and in

20   cooperation with probation, contacted the Department of

21   Corrections which provided the information that was sent

22   immediately to both counsel with the erroneous email.

23   Before I could share the information with probation to be

24   included in any addendum to the presentence report, the motion

25   to recuse was filed, and I decided I would take no further

1    action.

2         So, meanwhile, Mr. Shaffer, on his own, had requested

3    the same information from the Department of Corrections to

4    include in the presentence report.  And I've been told that the

5    probation office has received the disciplinary record, whatever

6    it is, from the Department of Corrections.  And I expect that

7    they will be preparing an addendum or supplement to the

8    presentence report and provide it.  I have not seen it.  I have

9    no idea what's in it.  It's up to them to -- since they

10   requested the information from them, to prepare in the

11   presentence report as they would with any of this type of

12   information.

13        But if probation requires relevant information and

14   cannot easily access it and the judge can access it, as I

15   could, the judge should not -- should be able to assist

16   probation and not have it considered extrajudicial conduct;

17   otherwise, if the judge cannot act, the information cannot

18   be obtained.  The facts in this case are distinguishable

19   from the facts in the cases that have been cited in the

20   pleading.

21        Now, of course, the defendant in this case can contest

22   whatever the disciplinary matter is.  I have not looked at what

23   the Department of Corrections sent to probation.  You can

24   contest the facts, whatever argument you want to think that's

25   appropriate, as to whether or not it should be considered on

1    the issue of deterrence or whatever else.

2          But until I was requested by probation to assist them in

3    getting the information, which I thought was relevant and

4    pertinent, as did they, I didn't have any information or didn't

5    know whether he did or did not have a record.

6          Now, he did not get transferred, and I was not notified

7    he was transferred, as did the others.  And that was because

8    when he came to D.C., I had asked the Marshals Service not to

9    transfer him because of his treatment for cancer.  So that's

10   why he didn't get transferred, unlike, I believe, the other

11   people.  But, anyway, I never got any notice about it.

12         So I'll hear from -- whatever you wish to say at this

13   point relating to what I've set out; the arguments or the

14   issue.

15         Probation, I'm assuming -- are they -- there they are --

16   will take whatever they received -- as I said, I have not seen

17   it -- put it in the presentence report as they would

18   ordinarily.  I've given no directions as to how they should do

19   it.  It's up to them.  They've done these things before.  Which

20   will be made available.  We'll set a date of when they can do

21   it, will be made available.

22         And you can, you know, file something, if you wish.

23   I'll give you time to supplement your memorandum in aid of

24   sentencing.  And I would be inclined to -- to -- certainly at

25   this point, to move the sentencing date in order to allow the

1    addendum to the report, for you to respond -- both of you, if

2    you wish to -- and in terms of -- you know, as I've said, I

3    don't know what's in there, whether they've given -- what they

4    provided me or they've given something different or they've

5    given less or what.  So it'll be what the presentence report

6    writer writes.

7         I sent you what I got because I wanted to make sure that

8    you got it early enough so that you would be able to consider

9    it.

10        So I'll hear anything wish to say, Mr. Ungvarsky.

11        MR. UNGVARSKY:  Your Honor, thank you very much.

12        And I took that in as best I could, you know, trying

13   to listen to the -- to the precise details.  Like you, I do

14   better if I see something in writing than if I'm hearing it;

15   and like you, I do better if I have some time to actually focus

16   on it.  So I don't think I got everything that you said, but

17   here's -- here's, I think, where the problems that -- still

18   lie.

19        THE COURT:  Okay.

20        MR. UNGVARSKY:  The first problem that still lies

21   is -- and I appreciate the Court coming out and correcting the

22   record, as the Court is putting it, with regard to what was in

23   the previous email from chambers.

24        THE COURT:  Right.  Right.

25        MR. UNGVARSKY:  That said, while it is a -- the Court

1  coming out in providing additional information, I see it as

2  less as a correction of the record and more as an expansion of

3  the record.  The record remains --

4          THE COURT:  I'm sorry.  What?  I'm sorry.

5          MR. UNGVARSKY:  I see it more of a -- of a -- less of

6  a correction of the factual record and more of an expansion of

7  the record.  Because the --

8          THE COURT:  Well, expansion.  But what I wanted to

9  correct is the email was not accurate.  Unfortunately, within

10  chambers, I was in trial and other things were going on.  I was

11  the only one who saw the email.  Nobody else on my staff saw

12  it.  So they made some assumptions that were not correct,

13  because the email itself had no names, no case names.

14          MR. UNGVARSKY:  A challenge that we have, though,

15  Your Honor, is in the record here as we're looking at the

16  question of an appearance of -- of partiality --

17          THE COURT:  Okay.

18          MR. UNGVARSKY:  -- is that there are written

19  communications from chambers that -- that reflect that the

20  Court contacted DOC itself.  And so --

21          THE COURT:  Well, I did.  But I didn't -- I did it

22  after probation.

23          May I make this very clear?  I tried to make this clear.

24  The email was a mistake, and judges do -- chambers do make

25  mistakes.  And the problem with emails sometimes is that.

1        But it's clear -- you can talk to Marshal Ruffin.  He

2   can tell you what was in there.  There was no names, nothing.

3   So I didn't have any information relating to it.  I contacted

4   probation.  Probation is the one who did not have access to it,

5   at least traditionally, and who suggested that I contact

6   Department of Corrections directly; that I'd be more likely to

7   get it.  I have an email in both -- I had a conversation, but I

8   had an email in terms of doing it, which is why I did it.

9        Now, I can't believe that you would suggest that if this

10  is relevant information -- and I haven't heard you saying it's

11  not on the issue of deterrent -- that if they can't get it but

12  they're potentially -- and at this point I didn't know whether

13  there was, frankly, no disciplinary record at all, for all I

14  know, at that point -- that I'm supposed to sit on my hands and

15  not get the information.  So what would you have suggested I do

16  at their request?

17        MR. UNGVARSKY:  I would have suggested the Court act

18  in a proper judicial manner.

19        THE COURT:  And do what?

20        MR. UNGVARSKY:  Notify the parties that you'll be

21  seeking this information; so the parties know that that's --

22  that's -- notify the parties that you wish the information.

23  Notify the parties that probation has said they think they

24  can't get the information timely or completely.  Allow the

25  parties an opportunity to weigh in before the Court takes an

1    action unknown to the parties.  And what the Court --

2            THE COURT:  Let me interrupt you at this point.

3        So you tell me what the parties -- if I had notified you

4    that I was going to do this, would you have objected?  What

5    would be the response?  Obviously, this information is

6    necessary.  So what would your response have been?

7            MR. UNGVARSKY:  With respect, Your Honor, I

8    really don't think at this point the answer -- that this should

9    be addressed as to what the defense would or wouldn't have

10   done.

11           THE COURT:  Right.  What the parties -- because

12   you -- what you've argued is that I should not do what

13   probation requested, which was to assist them in getting it.

14   Okay.  And once I got it, I certainly made it clear -- shared

15   it, not knowing what it is.

16       To have notified you at that point that I was going to

17   do it, what would the response have been?  What would be the

18   point of it, I guess is my question.

19           MR. UNGVARSKY:  Well, I don't know exactly what the

20   response would be.  Again, I'm here on my feet.  I haven't

21   had --

22           THE COURT:  Okay.

23           MR. UNGVARSKY:  -- a number of days to prepare

24   something that I was going to say in Court.

25           THE COURT:  I'll give you an opportunity to file

1    something more.  I'm going to be doing a written order, but I'm

2    trying to get a sense of if you had -- if I had notified you

3    what it is you would have said.  If you had said, Judge, you

4    can't do that, that's ridiculous.

5         So I'm -- I'd like to know, generally, what you're

6    thinking.  You put in your papers -- but it was based on

7    erroneous information -- that somehow notifying you would

8    have -- you got the information once I got it.  You got the

9    information.  So I'm not clear -- notifying you would have done

10   what?

11        MR. UNGVARSKY:  I think -- I think one thing I would

12   have said was that the Court should not have communicated

13   directly with the Department of Corrections in an ex parte,

14   not-on-the-record fashion; that is, no phone calls from the

15   Court in which defense counsel and government counsel weren't

16   present; no emails from the Court in which defense counsel and

17   government counsel weren't present; no communications that are

18   not recorded that can be made part of the record.  I think

19   what --

20        THE COURT:  Okay.  I'll go back and see if we

21   actually have some -- something.  Okay.  So your argument is

22   you would want to be involved in the request for whether or not

23   there's a disciplinary record, since I didn't know whether

24   there was one at that point.

25        MR. UNGVARSKY:  In addition, Judge, if I can

```
1    finish --
2              THE COURT:  Sure.
3              MR. UNGVARSKY:  In addition, Your Honor, with -- with
4    respect, I'm perplexed by the report from probation that they
5    have a hard time getting DOC records because in the
6    questionnaire that we fill out, in the releases that we sign,
7    the client signs a release to probation for probation to get
8    records from the Department of Corrections.
9              THE COURT:  Right.
10             MR. UNGVARSKY:  And -- and, you know, for none of us
11   in this courtroom is this our first rodeo.  I've had cases in
12   which the department of probation for the presentence report
13   has gotten records from the department -- probation has gotten
14   records from the Department of Corrections.
15        So I would have said, you know, Judge, I'm not quite
16   sure about that.  They have a release.  They can use the
17   release.  And -- and, actually, that's the -- that would be the
18   proper way for them to do it is -- is --
19             THE COURT:  I don't -- let me interrupt for a second.
20   We have a probation officer here who put something in writing
21   to Mr. Shaffer.  They -- the release isn't the issue.  The
22   question is whether the Department of Corrections gets the
23   records together and actually provides them and does so in a
24   timely manner.  You can --
25             Ms. Lustig, has this been a problem getting it or not?
```

1          THE PROBATION OFFICER:  Yes, Your Honor.  We have

2    just recently put into place some new protocol for trying to

3    obtain these records.  And, historically, we have not been able

4    to get -- the only information we have been able to get from

5    the D.C. Jail and CTF are medical records.  They provide those

6    regularly.  Any other records pertaining to educational

7    information, programming, and -- to my knowledge, we've never

8    been provided disciplinary records.

9          THE COURT:  Okay.  And if you talk to Mr. Shaffer,

10   who's the chief of the probation office, you will find that he

11   echoes the exact same thing.  Occasionally they get them, but

12   they're not timely in terms of the presentence report.  And the

13   Bureau of Prisons does provide the information easily.  They --

14   this was a new procedure that he worked up with the legal

15   counsel.  So the releases are not the issue.  They just don't

16   provide it.

17          MR. UNGVARSKY:  If we were on a phone call with the

18   Court about this at the time before the Court took action,

19   which, with all respect, the defense considers

20   extrajudicial action, or at least the appearance of it.  But I

21   do consider it that.

22          THE COURT:  Okay.  I understand.

23          MR. UNGVARSKY:  Then if we'd been on the phone and

24   if -- and if the Court had been saying this about how

25   Mr. Shaffer is saying you can't -- you know, they don't get

1   them, then my next fallback to the Court would be, Your Honor,

2   instead of your getting on the phone or having emails with the

3   Department of Corrections, please issue a written order that

4   directs the Department of Corrections to provide the records to

5   probation by a certain date because the Department of

6   Corrections will respond to a court order.

7        Now -- and also, I'll just say for what's it's worth, in

8   this particular case, using the release sent to the Department

9   of Corrections, I was able to obtain in less than a week

10  relevant records relating to the disciplinary action.  And I'm

11  just --

12        THE COURT:  You may have been able to get it, but if

13  you want to talk to -- you've heard Ms. Lustig.  I have it in

14  writing.  I have -- he's not here, Mr. Shaffer -- that they've

15  had problems with it, which is if -- believe me, if they'd been

16  able to get it, that would have been the end.

17        So I understand from your perspective a court order

18  would have been better in calling them out.  Now, I have to

19  say to you that court orders to -- on some of these things

20  are not that simple in terms of -- with the jurisdiction of

21  the court to require them to provide it to probation.  Okay?

22  Because I'm not asking them -- if I'm asking them to provide it

23  to me, yes, but you're objecting to my getting them.

24        MR. UNGVARSKY:  Well, that -- that raises even more

25  then, Judge, the importance that the parties were consulted at

1   the time before you took this action of reaching out to assist

2   probation, because as -- again, there would have been some

3   preparation as you notified us of this, and there would have

4   been some thinking, and some of the thinking might have been

5   you know what, Judge?  Probation assists you.  You don't assist

6   probation.  And if there's a problem --

7        THE COURT:  That's not necessarily -- that --

8   Mr. Ungvarsky, I don't know what realm you're in, but certainly

9   probation can ask the Court; and other agents within the court

10  systems have requested that the Court assist them in obtaining

11  information, which is what I did.  I didn't go up on my own.

12  This was their suggestion on how to resolve it and get the

13  information in an expeditious manner.

14       I understand your argument, but I think you're assuming

15  some things that don't happen in the real world.

16       MR. UNGVARSKY:  With all respect, Your Honor, I know

17  that you've been in the real world a long time.  But -- but

18  just to make the record clear, I have too.

19       THE COURT:  I don't doubt it.

20       MR. UNGVARSKY:  And I've worked in this court.  I've

21  worked in other federal district courts.  I've worked in

22  various state courts.  I've worked across the street.  I'm

23  aware of the real world.

24       And I'll say if a judge is telling me in court today

25  that there could be a problem with the Court's ability to craft

1    an order for the records to be provided --

2         THE COURT:  No.  No.  I'm suggesting to you in the

3    court order business is that I do them carefully.

4         This is an order that would be telling them to provide

5    the probation office with a record based on the release of the

6    defendant because you would not want me to get these records

7    directly.

8         Okay.  I've heard what you want.  You want -- you wanted

9    to be notified, be on the phone calls, and get a court order.

10   Okay.

11        MR. UNGVARSKY:  And I might have said, though, at the

12   time, that a court order wasn't possible.

13        As you've been speaking and as we've been speaking, I'm

14   realizing that maybe a court order is more complicated process

15   than like I thought and that maybe the Court doesn't have the

16   authority to order those records be provided to probation.  And

17   I don't know the answer to that.  I would say I'd be

18   researching it.

19        I do think the Court doesn't have the authority

20   judicially to reach out on its own to the Department of

21   Corrections to have the records provided.  I do think that, and

22   so I do think it proper --

23        THE COURT:  All right.  So you've -- okay.  From your

24   perspective, your viewing as an extrajudicial action to reach

25   out to the Department of Corrections, whom we deal with on a

 1    lot of different issues, to basically indicate to them that

 2    requesting -- at the request of the probation department to do

 3    it.  Okay.  I understand your view.

 4         MR. UNGVARSKY:  And the only issues I care about with

 5    the Court, vis-á-vis the Department of Corrections, is

 6    Barton Shively's case.  That's the thing.

 7         I realize the Court deals with the Department of

 8    Corrections in other matters, but -- but --

 9         THE COURT:  No, I understand.  In terms -- I'm just

10    saying to you that in terms of -- and I fully understand what

11    your position is in terms of -- you know, either -- if it

12    couldn't be a court order, then it -- you should have been

13    notified in order for you to be involved in whatever going

14    forward would be in terms of getting information.

15         Okay.  I understand your position.

16         MR. UNGVARSKY:  And I'll also say, Your Honor,

17    that -- that, you know, when I did the legal research and I

18    looked at, like, what the standards were under 455 and, like,

19    let's -- look, let's be very honest.  No lawyer wants to move

20    to recuse a judge that they're appearing in front of.

21         THE COURT:  I don't take things personally.  So don't

22    worry about that.

23         MR. UNGVARSKY:  No, but I want to say that.  And no

24    lawyer wants to move to recuse the judge who is about to

25    sentence their client.  And so then I looked at 455 and I

1    looked at recusal law, and I was quite happy to see that 455 a

2    number of years ago was amended, that that -- section (a) --

3    455(a) came from an amendment which was the appearance of --

4    of -- of partial- -- of im- -- of partiality, not just actual.

5    Because we don't think that the Court's actually biased or

6    prejudiced, and it's the appearance.

7        And one reason why it was expanded to the appearance,

8    that that's the standard, was precisely because the record

9    can't be recreated necessarily.  That -- that it puts

10   everyone -- a lawyer -- in a difficult position to -- when --

11   if the Court has had -- requesting that the Court put in the

12   record emails between the Court and probation, emails between

13   the Court and the Department of Corrections, and emails between

14   the Court and the U.S. marshal.  Like, putting all that in the

15   record or phone calls which can't be recreated because they're

16   not -- you know, they're not transcribed.

17       And so that's why 455(a) has the appearance language.

18   It's precisely because when these sorts of situations arise,

19   it's not that anyone thinks there's ill will on behalf of the

20   judge.  But the judge may have misstepped and caused a

21   situation in which there's concerns about how things appear,

22   and as -- you know, as the language of the statute, you know,

23   which -- which is a pretty low standard, you know, the -- I

24   don't have the whole thing in front of me right now; I'm

25   sorry -- but might appear to a reasonable person.

1          And so that's why I -- I mean, Mr. Shively truly

2      appreciated the Court's mindfulness of his medical situation.

3      Mr. Shively really, really, really --

4          THE COURT:  It has nothing to do with the medical

5      stuff.  That's not going to change.

6          MR. UNGVARSKY:  -- wants to go to sentencing as soon

7      as possible.  So -- and this -- you know, he wants out of CTF

8      as soon as possible.  He wants to go to the Bureau of Prisons

9      as soon as possible.  He wants to have the ability to get the

10     benefits that a Bureau of Prisons -- you know, we're assuming

11     we're not -- you know, we're assuming a confinement sentence.

12     That's what we even request.  And so -- and this -- you know,

13     he -- understandably, this disrupts that.  This disrupts that.

14     But -- but -- but I, nonetheless, think -- and I -- look, I

15     don't want to say this.  I hate to say this.  But I just think

16     that under the statutory standard, you know, not only am I

17     obligated to move the Court to disqualify itself --

18         THE COURT:  You're allowed to make these arguments.

19     And, obviously, you probably wouldn't be making them if -- if

20     his record was zero, but I understand.  You're doing what

21     you're supposed to do, and I don't fault you for that.  And I

22     don't take things personally so don't worry about that.  You've

23     done what you thought was appropriate.

24         MR. UNGVARSKY:  And based upon our conversation

25     today, I'm of the position -- and I continue to move -- that

1   the Court disqualify herself from Mr. Shively's sentencing.

2         THE COURT:  Okay.  I understand that.  I would

3   suggest you also take a look at a Tenth Circuit opinion.

4   *U.S. v. Burger*, 964 F.2d -- B-u-r-g-e-r.  964 F.2d 1065,

5   which, I think, is probably a little more on point.  The other

6   cases are not in the circuit, even though it's a different

7   circuit, but it's a little closer factually to this particular

8   case.

9         So let me hear from the government, if you have anything

10  to say.

11        MR. COLE:  Your Honor, I'll be brief.

12        This is not our argument, but I believe the Court did

13  not act extrajudicially.  You, in fact, throughout all judges,

14  ask probation -- or aid and assist probation, in either way, in

15  every way, and all of us have been in this court for many

16  years.  So I don't believe that, and I think counsel is wrong

17  about that.

18        More importantly, and finally, you hit the nail on the

19  head.  If you had found that the defendant was a model prisoner

20  and aided the correction office and he was a great asset while

21  he was in prison, that would be different.  Counsel would --

22  there would be no extrajudicial activity in this case.  That

23  would be something he wants forward.  So in this fact-finding

24  scenario, you have assisted in giving the broader picture of

25  what this defendant is.

1      Had we known that information, I might not -- I would

2  not have agreed to have him released or -- so there's arguments

3  both ways.  Because had we known he had participated in this,

4  we would have made a more forceful, robust argument why he

5  should stay in prison.

6      THE COURT:  Well, this is something that occurred,

7  you know, while he's locked up, not, you know, at the point

8  that you were doing release conditions.

9      MR. COLE:  You're right.  But I would have included

10  it further in our sentencing memoranda, which we've already

11  prepared.

12      But, simply stated, Your Honor, I wanted to make two

13  points.  One, we don't believe this is extrajudicial at all.

14  It is customary, standard, and appropriate for the Court to

15  find out all actions here and to assist probation in this

16  matter or any other activity where you would have a fulsome

17  look at the defendant's total picture.  And that is appropriate

18  for the Court and it's appropriate for you to let us know if

19  you found out something that we were not privy to.  We, meaning

20  the parties, were not privy to.

21      So I think that's all I have, Your Honor.  We believe it

22  was appropriate, and we stand by that.

23      MR. UNGVARSKY:  Your Honor, if I may, I actually want

24  to make sure this is clear.  If I had heard that the Court had

25  taken this action, which I consider to be extrajudicial,

1    regardless of what records or nonrecords the Court received,

2    I -- I could see myself still moving to disqualify the Court.

3    I don't know if I would have done it.  I would have to think

4    about that.

5              THE COURT:  Okay.  But let's not speculate about

6    something that didn't happen.  Okay.  Let's move on to -- to

7    what -- to what we need to do in terms of dates.

8              MR. UNGVARSKY:  But let me just say, the concern I

9    would have is that the Court in -- in taking that action, in --

10   in doing that looking, is doing the work of one of -- of --

11   frankly, of a party to obtain information that ends up being

12   provided to the Court as opposed to --

13             THE COURT:  It's not a party.  Probation isn't a

14   party.

15             MR. UNGVARSKY:  But the Court is supposed to be

16   wholly neutral in actuality and appearance.  And if I heard

17   that the Court took some action that seemed like the Court

18   was engaging in investigation, I would question whether the

19   Court was wholly neutral, regardless of what you're looking

20   for.

21             THE COURT:  I understand what your argument is.  I

22   still think you're missing the point; that in terms of -- the

23   only thing that I see that you would indicate is that you

24   should have gotten notice before I talked to the Department of

25   Corrections or somehow had issued some sort of court order.

1          I don't hear you arguing -- at least I understood --

2     neither that this information isn't probative and relevant on

3     deterrence or that I would be expected to do nothing if

4     probation couldn't get it.  So as I understand, you're not

5     making those arguments.

6          Your argument is that having found that probation

7     couldn't get it -- okay -- and that -- you know, both the --

8     the individual probation officer and the chief of the probation

9     office indicated that, which is why he went to the trouble to

10    set up this new arrangement, made the same statement.  I didn't

11    know one way or the other.  In terms of needing notice, having

12    been involved in any contact with it or somehow had done a

13    court order.  All right?  Those are the key parts.

14         You're not suggesting that having found that they

15    couldn't get it, that I'm expected to do nothing; right?

16    That's -- you're not arguing I do nothing.  You're arguing that

17    if -- if it was important to get this -- and you're not arguing

18    it's not deterrent effect -- it would be that I should have

19    given you notice, had an opportunity to weigh in, been involved

20    with any request with the Department of Corrections or, if need

21    be, do a court order.  Am I right?

22              MR. UNGVARSKY:  I'm not agreeing that you actually

23    should not have done nothing.

24              THE COURT:  Okay.

25              MR. UNGVARSKY:  I'm not agreeing with that.

1          THE COURT:  So your view is -- let me understand

2     this.  Your view is that having found that this -- you're not

3     claiming that it's not relevant, probative on deterrent.  Are

4     you claiming it's not?

5          MR. UNGVARSKY:  So as I --

6          THE COURT:  I'm trying to figure out what you're

7     disagreeing on.

8          MR. UNGVARSKY:  I know.  And as I understand it --

9          THE COURT:  Hold on.  Let me just --

10         MR. UNGVARSKY:  You're in charge.

11         THE COURT:  It's relevant, probative on deterrence?

12    Yes or no.

13         MR. UNGVARSKY:  What is the "it"?  Because my

14    understanding --

15         THE COURT:  Like any disciplinary -- like pretrial

16    services reports or any -- the lack of disciplinary reports or

17    disciplinary reports.

18         I gave you the example of the one where the person had

19    been detained for some time, had no disciplinary infractions,

20    and I reduced the sentence based on that, on the issue of

21    deterrence.  So pretrial services reports we get.  We look at

22    those, and we consider them on deterrence.

23         So I'm just asking you whether disciplinary or lack of

24    disciplinary infractions or some disci- -- assuming they're

25    notable.  I'm not talking about, you know, they didn't get off

1    the phone on time or something like that.  That those -- are

2    they -- would you agree that they're probative and relevant as

3    one thing to consider on deterrence?

4            MR. UNGVARSKY:  What I would agree is that they may

5    be.  However, Judge --

6            THE COURT:  Okay.  May be.  All right.  May be.

7            MR. UNGVARSKY:  However, in a situation in which --

8            THE COURT:  I'm not asking you -- I'm asking you in a

9    general term.  Okay?

10           MR. UNGVARSKY:  Generally --

11           THE COURT:  General terms.

12           MR. UNGVARSKY:  Generally, if the information is not

13   provided to you in a presentence report that --

14           THE COURT:  You're not answering my question,

15   Mr. Ungvarsky.

16           MR. UNGVARSKY:  You're not allowing me to argue my

17   position.

18           THE COURT:  Excuse me.  I've asked you a very

19   specific question because I -- in writing this order, I need to

20   know whether you agree or don't agree in general terms that

21   getting pretrial services reports and if there is or not a

22   disciplinary record for the detained, which is the opposite of

23   somebody in the community -- is certainly something that's

24   probative and relevant on deterrence?  Is it the only thing you

25   would consider on deterrence?  Of course not.

1    But is it something that you recognize as something

2    that -- you didn't put it in your pleadings; so I assumed that

3    that was not really an issue.  Is it an issue or not?

4         MR. UNGVARSKY:  I'd like to be able to explain my

5    answer and not just be cut off.

6         THE COURT:  Okay.  Fine.  Just give me the answer and

7    then explain it.

8         MR. UNGVARSKY:  I don't agree.  The reason I don't

9    agree is because the Court is -- the Court is a neutral

10   fact-finder -- or the Court is a neutral arbiter.  And so when

11   you are presented with material at a sentencing hearing, that

12   is the universe of information in which you are provided.  If

13   you're provided a situation in which there is no information

14   one way or the other as to someone's pretrial conduct while

15   incarcerated, then that is the state of the facts before the

16   Court.

17        Now, I would -- now, the defense could argue then that

18   there's no evidence that there were any problems that the

19   defendant had in the jail.  The Court might reject that

20   argument, but that's -- that is, I believe, when you don't have

21   information about something, then that's the state of the

22   information before you.  And I --

23        THE COURT:  Okay.  So from your view -- let me see if

24   I understand.  So I should -- whatever is put in the sentencing

25   memoranda, whatever is in the presentence report, that's it.

1     So if the Court thinks that you don't have a complete record,

2     you do nothing about it; you make a decision based on an

3     incomplete record?  Is that correct?

4           MR. UNGVARSKY:  You make a decision based upon the

5     information that the parties who have obligations to their

6     respective clients, the lawyers, have presented to you and that

7     the probation office has put in a report that the Court -- the

8     district court and the probation department have worked a long

9     time in figuring out what information goes in there, especially

10    in a situation like this one in which I believe -- and I didn't

11    get all my notes from what you were saying.  But at the time

12    there was no information whatsoever that Mr. Shively had

13    anything problematic at all.

14          THE COURT:  That's correct.  I didn't know what the

15    record was, frankly, as I mentioned.  It was helpful in the

16    other case.  For all I knew, he'd nothing, and it would have

17    been -- it would have been useful to know that.

18          MR. UNGVARSKY:  And I believe that at that point it's

19    the job of the judge to stay neutral and not, quote, assist

20    probation to go seek out information.

21          THE COURT:  See, you're viewing it as something that

22    it's neutral in terms of looking for something.  I view that

23    the judge in making a sentencing should be able to gather

24    information -- now, notice issues is a different issue.  But

25    should have the relevant information to make a decision about a

1    sentence with information that is generally considered.  You

2    don't appear to agree.

3         Probative and relevant.  Okay.  You've answered my

4    question on the -- the issue of whether this is information

5    that should be gathered in terms of things.  So as I see it, if

6    I'm not provided the information, I'm to do nothing more;

7    right?  One.

8         Two, based on the fact that I found out that I thought

9    that it would be helpful, like most judges, to know pretrial or

10   anything -- if you're detained, it's the opposite -- that in

11   finding out that probation could not get this information, I

12   should have provided you notice in advance, and you should have

13   been involved with any contact with the Department of

14   Corrections.  And if, you know, they weren't amenable to doing

15   something, I should consider potentially fashioning a court

16   order.  Obviously, you've said more than that, but is that the

17   key portions?  Is that your position?

18             MR. UNGVARSKY:  I think that's right, Judge.

19             THE COURT:  I'm going to do an order; so I need to

20   know what -- what your views are, and so I'm asking.

21             MR. UNGVARSKY:  Well, you asked me if those are the

22   key portions, and I said, "I think that's right, Judge."

23             THE COURT:  Okay.

24             MR. UNGVARSKY:  My answer was "I think that's right,

25   Judge."  I think those are the key portions.

1          THE COURT:  Okay.  All right.  Then let me at this

2     point set some schedules in terms of briefing.

3          The presentence report writer have asked on their own --

4     nothing to do with me -- okay?  They've made the request of the

5     Department of Corrections.  So they have information from their

6     own -- I haven't seen it.  I have no clue what's in it.  So

7     whatever they get, they -- seems to me they can -- since

8     they've done this on their own, they get to do an addendum.

9     You can argue about, you know, how it's to be considered.  But

10    they can do an addendum with whatever this information is.

11    They made a separate --

12         MR. UNGVARSKY:  Well, just to be clear, our position

13    is that they didn't do it on their own because the Court

14    assisted them.

15         THE COURT:  I didn't assist them because -- I had

16    nothing to do with that.  I -- I -- talk to her.  Mr. Shaffer,

17    upon hearing that they -- you know, about the issue about it,

18    on his own went and talked to legal counsel, and they put in

19    their own request.  I didn't hear about it until after they had

20    done it.

21         MR. UNGVARSKY:  Was that after the Court had spoken

22    to Mr. Shaffer about this matter?

23         THE COURT:  No.  No.  I contacted -- Mr. Shaffer

24    and I spoke after he had done it.  In other words, he had

25    already made an arrangement with legal counsel, and he had

1    already made the request for the material.  I had nothing to do

2    with it.

3              MR. UNGVARSKY:  In the Shively case he had already

4    made a request for the material?

5              THE COURT:  He made -- well, upon hearing in the

6    office that a request had been made for the material, he knew

7    that it's very hard to get it from the Department of

8    Corrections.  I didn't talk to him at that point at all.

9         Ms. Lustig, as I understand it, spoke to

10   Ms. Moses-Gregory, who spoke to Mr. Shaffer.  I had nothing to

11   do with any of that discussion.

12             MR. UNGVARSKY:  So Ms. Lustig --

13             THE COURT:  I didn't prompt anybody.  Hold on.  And

14   Mr. Shaffer talked to -- because he deals with, evidently,

15   Mr. Glover on other matters, evidently asked him for this -- to

16   set up a system so they could get them.  And they're going to

17   be putting them in all presentence reports in the future,

18   according to Mr. Shaffer.  And he made a request of -- or they

19   did -- without talking to me.  I had nothing to do with it.  I

20   heard about it after the fact.

21             MR. UNGVARSKY:  So Ms. Lustig a hundred percent,

22   completely on her own, initiated the contact with the

23   Department of Corrections?

24             THE COURT:  Nothing to do with me.  She contacted --

25   she's nodding.  I'll -- you can ask her.

1        Ms. Lustig, I assume at the direction of Mr. Shaffer but

2   I don't know what -- you made the direct connection; am I

3   correct or not?

4        THE PROBATION OFFICER:  Your Honor, I went up the

5   chain of command to my supervisor who then went to our Chief,

6   who knows Mr. Glover, who reached out to Eric Glover at the

7   D.C. Department of Corrections to try to institute some

8   protocol for us receiving this information.

9        THE COURT:  And then did you make a request?

10        THE PROBATION OFFICER:  Yes.  And then we made a

11   request by email and in -- by formal -- formal letter.

12        MR. UNGVARSKY:  But what was -- Ms. Lustig, what was

13   the connection that -- of your work related to Mr. Shively's

14   case?  Was it just like a general request, or did you make a

15   request to get the information of Mr. Shively's case?

16        THE PROBATION OFFICER:  We have to make a request for

17   each specific case.  So it's not a general request to the

18   Department of Corrections to send us any and all disciplinary

19   information, programming, education.  We have to make a request

20   for each specific inmate.

21        MR. UNGVARSKY:  So you made that request in

22   Mr. Shively's case to the Department of Corrections?

23        THE PROBATION OFFICER:  Yes.

24        MR. UNGVARSKY:  And when did you make that request?

25        THE PROBATION OFFICER:  We made that request on

 1    Tuesday.

 2              MR. UNGVARSKY:  Which Tuesday?

 3              THE PROBATION OFFICER:  This past Tuesday.

 4              MR. UNGVARSKY:  Okay.  Well --

 5              THE PROBATION OFFICER:  I'm sorry.  Wednesday.

 6              THE COURT:  Okay.  It had something -- you know,

 7    Mr. Shaffer --

 8              MR. UNGVARSKY:  But that's long after this issue

 9    arose, Judge.

10              THE COURT:  No, I fully agree.  I'm just saying to

11    you that on -- separate from my requesting the information,

12    totally separately, Mr. Shaffer -- when she went up and

13    indicated that they were having problems, Mr. Shaffer talked to

14    Mr. Glover, as I understand it.  They set up this new system

15    going forward.

16         And they made a specific request for Mr. Shively.  I had

17    nothing to do with it.  I didn't ask Mr. Shaffer to do this,

18    nor did I know that they had done it until after they had done

19    it.  So I -- they did their own thing.

20              MR. UNGVARSKY:  Well, I must say -- I must say,

21    Judge, I am thoroughly perplexed as to the time line.  I'm

22    perplexed as to the communications.  I'm not saying that

23    anything's been stated inaccurately.  I'm just telling you I'm

24    perplexed.  I'm confused.  Maybe when I get a transcript, I'll

25    read it.  But I just think that --

1          THE COURT:  I have -- I will say to you that I had

2    made the request of the Department of Corrections before, as I

3    understand it, Mr. Shaffer talked to Glover and whatever.

4    The -- Ms. Lustig, as she's indicated, spoke to her supervisor,

5    who went up to Mr. Shaffer; that they -- in terms that they

6    were having difficulty getting this information.  Okay?  Which

7    is, you know, totally separate from what I had already

8    requested of the Department of Corrections.

9          They then went -- Mr. Shaffer talked to Glover.  They

10    set some new system up for all of them, and they made a

11    specific request for Mr. Shively's material.  Okay?  I had

12    nothing to do with it.  I heard about it after the fact.  But

13    it was after I had made the request of the Department of

14    Corrections.

15          MR. UNGVARSKY:  All right.  So now I guess what I'm

16    understanding is what you're saying is that you did make a

17    request to the Department of Corrections.

18          THE COURT:  I did make a request, which you received.

19    The material I received was sent to both counsel as soon as I

20    received it.  I never sent it to probation.  Because you filed

21    your motion to recuse, I didn't think it appropriate to provide

22    it to them.  So I did not provide it to them.

23          MR. UNGVARSKY:  Okay.

24          THE COURT:  They, on their own -- okay.  They, on

25    their own, having made the request at an earlier point -- it

1    took time to go up through their channels of theirs, they went

2    ahead and did a separate discussion.

3            MR. UNGVARSKY:  Okay.  So there's two tracks of

4    requests.  And I would say that the request that the Court

5    did remains the improper extrajudicial request.  And that then

6    later you're saying there was a subsequent track of requests

7    made by probation, but that subsequent track or request by

8    probation didn't happen until after the Court made its

9    request.

10           THE COURT:  Right.  I fully agree.  All I'm saying to

11   you is that they have information that they made a request

12   from, and they are prepared to make -- to file an addendum or

13   supplement.  I'm waiting to hear when they can do that.  It'll

14   be based on not what I provided because they've never received

15   it.  The only thing they have is what corrections gave them.

16   So that's what they would do -- work on.  I never sent anything

17   over to them.  So I'm asking for a date so we can move this

18   along.  A date --

19           MR. UNGVARSKY:  All right.  I will say they did

20   receive those records because they -- if they have access to

21   ECF --

22           THE COURT:  Right.  They just received as -- I have

23   no idea what they got.  Okay?  All I know is that they received

24   information.  So I would like to set a date for them to do

25   whatever their -- a date that they can do this addendum that

1    includes whatever they received and however they present it.

2    Okay?  It's up to them to -- and then use their normal

3    practice.  I'm not telling them to do anything with it.

4         When can you do that?

5              THE PROBATION OFFICER:  Your Honor --

6              THE COURT:  Approximately.

7              THE PROBATION OFFICER:  Approximately -- we would

8    request, like, a week in order to get the information out.

9         And will that be a final presentence report, or will

10   that be a disclosure -- another disclosure to the parties?

11             THE COURT:  That's up to you.  I'm not getting into

12   what your procedures are.  You tell me what -- how you do

13   things.

14             THE PROBATION OFFICER:  I just -- normally, if you're

15   asking for an addendum, we would just do one final report to

16   the Court and list on the very last page of the addendum that

17   we --

18             THE COURT:  Okay.  Mr. Ungvarsky, what would you like

19   them to do with this information that they've gotten

20   separately?

21             MR. UNGVARSKY:  I think that's agreeable.

22             THE COURT:  Do you want them to disclose it to

23   you before they put it into the final report?  What do you

24   want?

25             MR. UNGVARSKY:  Well, if -- if -- if it's possible

1    for the probation department to both disclose to us the records

2    while they're working on their -- she's shaking her head.  So.

3              THE PROBATION OFFICER:  We're not allowed to disclose

4    the records to a third party, Your Honor, unless you direct,

5    unless you --

6              THE COURT:  I'm not getting into this.  This is

7    Mr. Ungvarsky.  He's got a release from his client.  He can do

8    what -- however your procedures.  I'm not getting into your

9    procedures.

10             THE PROBATION OFFICER:  We do not disclose.

11             THE COURT:  So you don't disclose it to defense

12   counsel?

13             THE PROBATION OFFICER:  Not the actual records.  We

14   do not send the records to any -- any of our records that we

15   receive independently for verification purposes, we do not

16   allow those to go out.

17             THE COURT:  Okay.  Well, then what would you like to

18   do?

19             MR. UNGVARSKY:  In light of that, I would ask the

20   Court to order that the final presentence report be completed

21   as soon as possible, no later than one week, but earlier than

22   one week, if possible.

23             THE COURT:  All right.  So we're talking about -- I

24   think it's March 3rd.  So that's one date.

25             The second date is in terms of -- do you -- I'm prepared

1    to do an order.  Do you want to put an additional argument on,

2    file something, Mr. Ungvarsky, or should I view it as you've

3    made -- I have the original, you've made your argument, and I

4    think we've figured out precisely what your major arguments

5    are, or do you want to supplement what you have filed?  And

6    then I'll do the order after that.

7              MR. UNGVARSKY:  I'm not requesting additional oral

8    argument on the motion to recuse.

9              THE COURT:  Okay.  But do you want to put -- I'm

10   asking if you -- I'm going to do an order and make a decision

11   in it.  So I'm asking you, do you want to file something

12   additional in writing or between -- what you originally filed

13   and what you've said today is sufficient?

14             MR. UNGVARSKY:  As it relates to the motion to

15   recuse, what I said today is sufficient.

16             THE COURT:  Okay.  Do you want to file anything else

17   as it relates to your getting the presentence report; so we'll

18   set a date.

19             MR. UNGVARSKY:  Yeah.  Yes.  I ask the Court to set a

20   date for the parties to file any, you know, supplemental

21   sentencing memoranda that relate to the, you know, updated

22   presentence report.

23             THE COURT:  Okay.  When do you want to file that?

24   Give me a date.

25             MR. UNGVARSKY:  The -- either the 8th or the 10th.  I

1    care most about getting to sentencing as quickly as possible.

2    That's what Mr. Shively --

3            THE COURT:  You can always file something earlier.

4    Why don't we set an outside date so we're not moving stuff

5    around.  So we'll do --

6            MR. UNGVARSKY:  The 10th.

7            THE COURT:  -- March 10th as the outside date.

8            MR. UNGVARSKY:  Okay.

9            THE COURT:  You or the government to file whatever it

10   is relating to the sentencing memorandum with the additional --

11   whatever the additional information is.

12           MR. UNGVARSKY:  Okay.

13           THE COURT:  All right.  And I will, based on that,

14   do an opinion relating to the issue to recuse.  And then at

15   that point I will set a sentencing date.  Either I will do it

16   or another judge will be doing it.  So it'll take some time,

17   obviously, to put another judge in in terms of them, you know,

18   reviewing the material or it'll take me some time to do it.

19   So we'll set a sentencing date -- I'll cancel -- vacate the

20   one we've got, and once this is all put together, then a

21   new date will be set.  It's on February 27th, is the present

22   date.

23           MR. UNGVARSKY:  I think it might be the 28th.

24           THE COURT:  28th.  I'm sorry.  You're right.  The

25   28th.

1          MR. COLE:  Your Honor, is there a way you can keep

2     this case?  I think it would be less --

3          THE COURT:  I'm sorry.  Is there --

4          MR. COLE:  Is there a way you can keep this case as

5     opposed to another judge, or something like that?

6          THE COURT:  Well, I'm going to make a decision based

7     on his pleading and what he's argued today; do some additional

8     research.  I suggest you look at the case that I had, and I'll

9     indicate at that point what I'm doing.

10          MR. UNGVARSKY:  Actually, that's a good point.

11     Because you told me about that Tenth Circuit case, can you give

12     me until this Monday at 9:00 a.m. to file any supplemental --

13     any supplemental motion?  I'll research that Tenth Circuit

14     case, and I'll get things filed.

15          THE COURT:  That's February 27th.  So supplemental on

16     the -- on the motion to recuse?

17          MR. UNGVARSKY:  Right.

18          THE COURT:  Okay.  So we have the 27th, any

19     supplement on the motion to recuse, which government can do

20     something if they want as well.  Don't have to.

21          We will then do -- what did I do with the dates?  Hold

22     on.

23          We'll then do the March -- I will then do the March --

24     yeah, here we go.  The final presentence report will be

25     March 3rd.

1       Any -- the sentencing memorandum, any supplement

2  relating to the new report will be March 10th.

3       And then I'll issue my opinion, and a new sentencing

4  date would be set.

5         MR. UNGVARSKY:  Understood.

6         THE COURT:  All right.  So those are the dates.

7       All right.  Parties are excused then.

8         (Proceedings were concluded at 1:58 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      <u>CERTIFICATE OF STENOGRAPHIC OFFICIAL COURT REPORTER</u>

2

3          I, Nancy J. Meyer, Registered Diplomate Reporter,

4    Certified Realtime Reporter, do hereby certify that the above

5    and foregoing constitutes a true and accurate transcript of my

6    stenograph notes and is a full, true, and complete transcript

7    of the proceedings to the best of my ability.

8

9                    Dated this 14th day of March, 2023.

10

11                    /s/ Nancy J. Meyer
                      Nancy J. Meyer
12                    Official Court Reporter
                      Registered Diplomate Reporter
13                    Certified Realtime Reporter
                      333 Constitution Avenue Northwest
14                    Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25